TUG VALLEY RECOVERY
CENTER, Appellant,

v.

James WATT, Secretary of the Interior;
David C. Callaghan, Director of the
West Virginia Department of Natural
Resources; Willis Hertig, Deputy Di-
rector of the West Virginia Department
of Natural Resources; James Pitsenbar-
ger, Chief of Division of Reclamation,
Department of Natural Resources;
David W. Robinson, Chief of Water Re-
sources, Department of Natural Re-
sources; Walter Miller, Director, West
Virginia Department of Mines, in their
official capacities as listed and as Mem-
bers of the West Virginia Reclamation
Commission; West Virginia Reclama-
tion Board of Review, Paul Nay, O.O.
Neely, Jr., Morgan Lyons, Dr. Henry
Rauch, and John W. Straton, in their
official capacity as members of the Rec-
lamation Board of Review, Appellees.

No. 82–1194.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 9, 1982.

Decided March 29, 1983.

John McFerrin (Tobias J. Hirshman, Charleston, W.Va., Appalachian Research and Defense Fund, Inc., on brief), for appellant.

Marye L. Wright, Asst. U.S. Atty., Charleston, W. Va., Leonard Knee, Asst. Atty. Gen., State of W. Va., Charleston, W. Va. (David A. Faber, U.S. Atty., Charleston, W. Va., on brief), for appellees.

Before RUSSELL, HALL and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Tug Valley Recovery Center ("Tug Valley"), a West Virginia environmental organization, brings this appeal claiming the Secretary of the United States Department of the Interior ("the Secretary") violated the Surface Mining Control and Reclamation Act of 1977 and the due process clause of the fifth amendment. Specifically, Tug Valley contends the Secretary breached his statutory and constitutional duties by approving a state environmental regulatory program that included a board of review composed of individuals representing specific interest groups. In a separate claim brought under 42 U.S.C. § 1983, Tug Valley also names certain state defendants, claiming that because the regulatory program implemented by these state officials relegated Tug Valley to an appeal before a biased review board, Tug Valley's constitutional due process rights as well as certain statutory rights were denied. The district court dismissed the case for lack of subject matter jurisdiction, holding that under federal law, Tug Valley's complaint could only be brought in the United States District Court for the District of Columbia. We affirm.

I.

In 1977, Congress passed the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1201 et seq., which provides for comprehensive regulation of surface coal mining and reclamation of mined lands. After an initial period of direct regulation by the Department of the Interior, primary responsibility for the supervision of mining and reclamation activities is to be delegated to the individual states. This transfer of authority takes place when a state submits an acceptable regulatory program that is approved by the Secretary. Under section 503(a) of SMCRA, 30 U.S.C. § 1253(a), the state program must demonstrate that the "State has the capability of carrying out the provisions of this chapter and meeting its purposes through . . . a State law which provides for the regulation of surface coal mining and reclamation operations in accordance with the requirements of this chapter. . . ." Under section 503(b), 30 U.S.C. § 1253(b), the Secretary may not approve any state program "until he has . . . found that the State has the legal authority and qualified personnel necessary for the enforcement of the environmental protection standards." The accompanying regulations restate that the Secretary shall not approve a program unless it "provides for the State to carry out the provisions and purposes of the Act" and does not contain laws or regulations which would interfere with the Act. 30 C.F.R. § 732.15.

One of the provisions of SMCRA, section 517(g), 30 U.S.C. § 1267(g), requires that "[n]o employee of the State regulatory authority performing any function or duty under this chapter shall have a direct or indirect financial interest in any underground or surface coal mining operation." Pursuant to this provision, the Secretary promulgated regulations in 1977 defining "employee" and "direct or indirect financial interest." "Employee" was defined as:

(a) any person employed by the State Regulatory Authority who performs any function or duty under the Act, and (b) advisory board or commission members and consultants who perform any function or duty under the Act, if they perform decision-making functions for the State Regulatory Authority under the authority of the State law or regulations. However, members of advisory boards or commissions established in accordance with state law or regulations to represent

multiple interests are not considered to be employees . . . .

"Direct financial interest"

[m]eans ownership or part ownership by an employee of lands, stocks, bonds, debentures, warrants, partnership shares, other holdings and also means any other arrangement where the employee may benefit from his or her holding in or salary from coal mining operations. Direct financial interests include employment, pensions, creditor, real property and other financial relationships.

"Indirect financial interest"

[m]eans the same financial relationships as for direct ownership, but where the employee reaps the benefits of such interests, including interests held by his or her spouse, minor child and other relatives, including in-laws residing in the employee's home.

30 C.F.R. § 705.5 (1981).

On March 3, 1980, West Virginia presented to the Secretary its program for regulation of surface mining and reclamation. As an integral part of this program the state submitted the West Virginia Coal Mining and Reclamation Act of 1980, sections twenty-three and twenty-four of which create the Reclamation Board of Review ("RBR"), a body empowered to review any notice, order, or final determination of the state director of the Department of Natural Resources and any order of the Reclamation Commission.[1] W.Va.Code §§ 20–6–23 and –24. The RBR is composed of five members appointed by the Governor, who "by reason of . . . previous training and experience, can be classed as . . . capable and experienced" in the respective areas of coal mining, agriculture, forestry, engineering, and water pollution control. W.Va.Code § 20–6–23(a).

On October 20, 1980, Secretary Andrus approved most of the West Virginia plan,

including the RBR, but withheld final approval pending certain revisions in the proposed program. Tug Valley, which participated in the federal administrative proceedings leading up to approval, began this suit on December 19, 1980, charging that the Secretary's endorsement of the RBR violated the Constitution and federal law and that acts of state officials gave rise to a cause of action under 42 U.S.C. § 1983. On January 21, 1981, Secretary Watt formally certified a revised West Virginia plan. Tug Valley then launched a second action, this one naming Secretary Watt, which was later consolidated with the original lawsuit.

Upon approving the RBR, Secretary Andrus responded to criticism raised in public hearings that the RBR violated the conflict of interest prohibitions of section 517(g) of SMCRA. 45 Fed.Reg. 69270 (1980). Noting that section 517(g) applied only to "employees," the Secretary cited 30 C.F.R. § 705.5, which states that members of advisory boards or commissions established in accordance with state law or regulations to represent multiple interests are not to be considered employees. The Secretary concluded that the RBR was established to represent multiple interests; therefore, its members were exempt from the conflict rules of section 517(g).

Tug Valley asserts jurisdiction to protest the Secretary's action under section 526(a)(1) of SMCRA, 30 U.S.C. § 1276(a)(1), which states:

Any action of the Secretary to approve or disapprove a state program . . . shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue. Any action by the Secretary promulgating national rules and regulations . . . shall be subject to judicial review in the United States District Court for the District of Colum-

---

1. Under the West Virginia act the director of the Department of Natural Resources approves all surface mining permits and issues notices of violations to operators who fail to comply with the statute or regulations or with permit conditions. W.Va.Code § 20–6–9. The director also hears appeals from the issuance of cessation orders by the surface mining reclamation inspectors. W.Va.Code § 20–6–16. The Reclamation Commission promulgates regulations implementing the Coal Mining and Reclamation Act, makes inspections, conducts hearings and designates areas unsuitable for surface mining. W.Va.Code §§ 20–6–7 and 20–6–22.

bia .... A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day.

This provision gives a cause of action to "any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary." *Id.*

## II.

Tug Valley's substantive claims are threefold. First, it contends the Secretary acted in violation of section 503 of SMCRA and 30 C.F.R. § 705.5 by approving a state plan that included, contrary to the mandate of section 517(g) of SMCRA, an appeals review board composed of individuals with direct or indirect financial interests in underground or surface coal mining. Second, Tug Valley alleges that the Secretary's approval of this portion of the state program violated the due process clause of the fifth amendment by "establish[ing] a system with inherent conflicts of interest." Third, Tug Valley contends that the implementation by state officials of the approved plan relegates it to an appeal before a biased review board in contravention of its fourteenth amendment and state constitutional due process rights.

In defense the Secretary argues first that the district court for the Southern District of West Virginia lacked subject matter jurisdiction, since Tug Valley's challenge amounted to an attack on 30 C.F.R. § 705.5, which under section 526(a)(1) of SMCRA could only be brought in the district court for the District of Columbia within sixty days of promulgation. Second, the state defendants maintain that Tug Valley failed to state a claim upon which relief could be granted under 42 U.S.C. § 1983.

The district court dismissed the case below for lack of subject matter jurisdiction.

Concerning Tug Valley's statutory claim, the court agreed with the Secretary that since "employee" is defined in 30 C.F.R. § 705.5 specifically to exclude "members of the advisory boards or commissions established in accordance with state law or regulations to represent multiple interests," the conflict rules binding on state employees under section 517(g) would not apply to the RBR.[2]

The court went on to characterize Tug Valley's statutory claim as an attack on 30 C.F.R. § 705.5 inasmuch as the regulation exempted advisory boards representing multiple interests from the conflict of interest prohibitions of section 517(g). Section 526(a)(1) of SMCRA specifically assigns jurisdiction over attacks on the Secretary's regulations to the district court for the District of Columbia.[3] The court then dismissed the entire case without addressing the constitutional claims against the Secretary and state defendants.

## III.

On appeal, Tug Valley disputes the district court's characterization of its suit as an attack on federal regulation 30 C.F.R. § 705.5. On the contrary, Tug Valley maintains it seeks to enforce that provision. These contradictory characterizations stem from differing interpretations of § 705.5. Tug Valley relies on the first sentence of the regulation, which in effect subjects members of boards with decision-making functions under SMCRA to the conflict of interest prohibitions in section 517(g). The government relies on the second sentence of § 705.5, which exempts from conflict rules members of advisory boards created to represent diverse interests.

Tug Valley urges that the Reclamation Board of Review is much more than a mere advisory board. It has the power to make findings resulting in affirmance or reversal of the orders of the director of the state

---

**2.** Tug Valley does not seriously dispute the fact that the RBR was created to represent multiple interests within the meaning of § 705.5.

**3.** A desire for uniform interpretation of federal regulations explains this assignment of exclusive jurisdiction. *Cf.* 42 U.S.C. § 1973c (Voting Rights Act); 42 U.S.C. (Supp. III) § 7607(b)(1) (Clean Air Act).

Department of Natural Resources or the Reclamation Commission. *See* note 1, *supra;* W.Va.Code § 20–6–24. The RBR's orders are self-enforcing. W.Va.Code § 20–6–25(b). Cases decided by the RBR may be appealed to the state courts, but they are subject to the narrow substantial evidence scope of review, not heard *de novo.* W.Va. Code § 20–6–26(e). These facts, according to Tug Valley, amply show that under 30 C.F.R. § 705.5 members of the RBR perform critical decision-making functions under the Act and should therefore be subjected to the conflict of interest prohibitions of section 517(g).

However forceful this argument as a normative proposition, the plain language of the regulation as well as the Secretary's comments in the public record pertaining thereto indicate that members of advisory boards representing multiple interests are exempt from conflict of interest restrictions, even where such boards have substantial authority under state law and SMCRA. Upon issuing § 705.5, the Secretary stated:

> [T]he Department has clarified the term employee in § 705.5 to include advisory board or commission members and consultants who perform any function or duty under the Act, if they perform decision-making functions for the State Regulatory Authority under the authority of State law or regulations. *An exception has been made for members of advisory boards or commissions which are established to represent multi-interests in accordance with requirements of State law*

or regulations. *This exception is necessary to avoid dismembering boards or commissions composed in such a manner as to represent divergent interests.* (emphasis added).

42 Fed.Reg. 56061 (1977). Thus, while the first sentence of § 705.5 defines "employee" to include any state decision-maker under the Act, the second sentence excludes decision-makers who happen to serve on multi-interest advisory boards. The Secretary evidently has determined that sound policy calls for preserving state mining and reclamation commissions representing diverse interests.

■ In short, 30 C.F.R. § 705.5 will not yield to Tug Valley's argument that the RBR is subject to section 517(g). Environmentalists may well object to the Secretary's exemption of boards representing multiple interests, but the proper procedure for pursuing their grievances is to petition the Secretary for amendment of the regulation and, if rejected, to seek judicial review.[4] *See* 30 C.F.R. § 700.12; 5 U.S.C. § 702 (1977). Tug Valley simply has no statutory ground for complaint under the existing regulatory scheme. Its challenge to the Secretary's approval of the RBR—approval which was entirely consistent with section 517(g) of the Act as elaborated under 30 C.F.R. § 705.5—can only be construed as an attack on § 705.5 itself. Therefore, the district court's dismissal of Tug Valley's statutory claim for lack of subject matter jurisdiction was proper.[5]

---

**4.** Under section 526(a)(1) of the Act, Tug Valley could have challenged 30 C.F.R. § 705.5 within sixty days of promulgation by the Secretary in the U.S. District Court for the District of Columbia. Since the RBR was in existence at the time § 705.5 was issued, Tug Valley should have been on notice that Board members would not be subject to the conflict provisions of the Act.

**5.** Furthermore, even if § 705.5 did include members of multi-interest commissions within the definition of "employee," Tug Valley would still have failed to state a claim under the statute. Section 517(g) bars state employees with duties under the Act from having any "direct or indirect financial interest in any underground or surface coal mining operation."

W.Va.Code § 20–6–23(a) does not permit members of the RBR to have financial interests in coal mining enterprises. It simply states that the Board is to be composed of five members who by reason of previous vocation, employment, training, or affiliations can be classed as capable and experienced in the areas of coal mining, agriculture, forestry, engineering and water pollution control. These expertise qualifications in no way conflict with a prohibition against ownership of financial interests in coal mines. Also, in its complaint, Tug Valley does not charge individual members of the RBR with owning financial interests in coal mining operations in contravention of SMCRA. Thus, Tug Valley has completely failed to allege facts to show that the West Virginia Reclamation Board of Review as presently constituted vio-

## IV.

In addition to the alleged violation of SMCRA, Tug Valley charges that the Secretary and the state defendants violate the fifth and fourteenth amendments by implementing a state law that, to quote Tug Valley's complaint, "establishes a system of inherent conflicts of interest which are violative of the due process clause ...."

The particular due process right alleged to have been infringed is Tug Valley's right to an impartial board of review. Although Tug Valley itself appears never to have suffered an adverse ruling from the RBR,[6] it contends that the Board "has consistently acted in a fashion which shows its bias against citizen participation and environmental concerns."[7] Tug Valley rests on several Supreme Court cases upholding the right to an impartial tribunal. The seminal authority is *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), in which the Court invalidated an ordinance that enabled judicial officers to profit monetarily from convicting defendants. Subsequent cases cited by Tug Valley all involve allegations that judicial or quasi-judicial officers had pecuniary interests that infected their ability to render unbiased decisions. *See Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972).

Here, in contrast, Tug Valley has not alleged that members of the RBR have financial interests in the outcome of cases brought before them. Rather, the gist of Tug Valley's claim is that individuals trained and experienced in coal mining, agriculture, forestry, etc. and appointed to the RBR by the governor of West Virginia are inherently biased against environmental interests and may not therefore be allowed to sit in judgment on matters of ecological concern.[8]

These allegations do not state a constitutional violation. There is no due process right to have one's claims heard before a court purged of ideology. One is certainly entitled to a tribunal untainted by monetary inducements or evident personal bias,[9] but a litigant may not hold a judge's

---

lates section 517(g), even assuming RBR members are "employees" subject to the conflict rules of SMCRA.

6. Tug Valley had one case pending before the RBR at the time this suit was begun.

7. Since Tug Valley has alleged elsewhere in its complaint that its members will suffer environmental harms from continued operation of the RBR, the organization has satisfied the requirement that it assert more than a "generalized grievance" in order to make out injury in fact. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

8. We offer no opinion on the proposition that the experts selected to fill the five-member RBR would display inherent conflicts of interest and consistently align themselves in opposition to West Virginia environmentalists. We note, however, that W.Va.Code § 20–6–23(a) calls for the appointment of some whose specialties suggest compatibility with environmental concerns: forestry, agriculture, and water pollution control. The forestry and agriculture experts are expected, under the statute, to represent the "general public interest." Thus, on its face the statute appears to uphold environmental values.

9. *See, e.g.,* 28 U.S.C. §§ 144, 455(a) and (b) (1982):

§ 144. Bias or prejudice of a judge

Whenever a party to any proceeding in a district court files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein....

§ 455. Disqualification of justice, judge or magistrate

(a) Any justice, judge, magistrate or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or

experience and education against him or her. A criminal defendant may be tried before a judge who was once a prosecutor, and a former legal aid attorney appointed to the bench may preside over a food stamp entitlement case.[10]

V.

Under section 526(a)(1) of SMCRA, the district court for the Southern District of West Virginia had no jurisdiction to hear what amounted to an attack on federal regulation 30 C.F.R. § 705.5, and the constitutional claim advanced by Tug Valley failed to state a cause of action. The judgment of the district court is, therefore,

AFFIRMED.

such lawyer has been a material witness concerning it;

(3) Where he served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

We acknowledge that the West Virginia Reclamation Board of Review is not subject to these statutes, nor for that matter are RBR members bound by the code of judicial ethics. 28 U.S.C. §§ 144 and 455 simply illustrate that impartiality problems arise in the context of a particular proceeding rather than in the form of allegations of general bias against certain viewpoints.

10. *See* K. Davis, *Administrative Law Treatise,* § 19.1 through § 19.6 (2d ed. 1978): "A prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification.... A personal bias or personal prejudice, that is, an attitude toward a person, as distinguished from an attitude about an issue, is a disqualification when it is strong enough...." *Id.* at § 19.1, p. 371.