UNITED STATES of America

v.

DEVIL'S HOLE, INC.

UNITED STATES of America

v.

HECLA MACHINERY AND EQUIP-
MENT COMPANY, INC.

No. 84–1046.

United States Court of Appeals,
Third Circuit.

Argued Sept. 10, 1984.

Decided Nov. 9, 1984.

K. Robert Conrad (argued), Charles J. Bloom, Ronald H. Levine, Conrad, Kerr, Bloom, Hitchner & O'Brien, Philadelphia, Pa., for appellants.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, James G. Sheehan (argued), James J. West (argued), Asst. U.S. Attys., Philadelphia, Pa., for appellee.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Devil's Hole, Inc. and Hecla Mining and Machinery Co. appeal from judgments against them in a suit by the United States for reclamation fees claimed to be due under section 402 of the Surface Mining Act.[1] P.L. 95–87, Title IV § 402, 91 Stat. 457, 30 U.S.C. § 1232. They claim that the court erred, both factually and legally, in holding that they owe such fees. We affirm.

### I.

Title IV of the Surface Mining Act, dealing with abandoned mine reclamation, creates a trust fund in the Treasury of the United States for the restoration of land and water resources and the environment previously degraded by adverse effects of coal mining practices. 30 U.S.C. § 1233(3). The trust fund consists of sums collected pursuant to section 402(a) of the Act which provides:

All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 10 cents per ton, whichever is less.

30 U.S.C. § 1232(a). Reclamation fees not promptly paid are recoverable from coal mine operators "in any court of competent jurisdiction in any action at law to compel payment of debts." 30 U.S.C. § 1232(e).

The Act authorizes the Secretary of the Interior to promulgate rules and regulations necessary to carry out the provisions of the Act. 30 U.S.C. §§ 1211(c)(2), 1224(a). The Secretary has by regulation defined "[a]nthracite, bituminous and subbituminous coal [as] all coals other than lignite coal." 30 C.F.R. § 870.5 (1983). He has also defined "[r]eclaimed coal [as] coal recovered from a deposit that is not in its original geological location, such as refuse piles or culm banks or retaining dams and ponds that are or have been used during the mining or preparation process, and stream coal deposits." Id. Moreover "[r]eclaimed coal operations are considered to be surface coal mining operations for fee liability and calculation purposes." Id. Thus, under the regulations the Secretary claims a reclamation fee of 35 cents a ton or 10 per centum of the value of the coal, whichever is less, on reclaimed coal.

### II.

Devil's Hole and Hecla supply Pennsylvania Power and Light Company[2] with anthracite silt, some of which is recovered from lands owned by that electric power generator. Anthracite silt is a finely divided waste material that formerly was produced when anthracite coal from underground mines was processed by washing

---

1. The district court's findings of fact and conclusions of law are reported. *United States v. Devil's Hole, Inc.,* 548 F.Supp. 451 (E.D.Pa.1982).

2. Although Pennsylvania Power and Light Company is not a party to this litigation, it has agreed to indemnify Devil's Hole and Hecla if a judgment is entered against them.

with water. When anthracite mining was common in eastern Pennsylvania, the mixture of water and waste resulting from processing was directed into retaining areas called silt dams or slush dams. Over the years the water evaporated, leaving a mixture of rock and fine coal particles. Devil's Hole and Hecla use bulldozers and front end loaders to recover the silt from silt dams. The product is then transported to one of Pennsylvania Power and Light Company's electric generators, where, mixed with other coal, it is used as a boiler fuel. Neither Devil's Hole nor Hecla paid any reclamation fees.

### III.

Claiming that the operations of Devil's Hole and Hecla fall squarely within the definition of surface coal mining in 30 C.F.R. § 870.5 (1983), the United States commenced this action to recover unpaid reclamation fees. Devil's Hole and Hecla defended on two grounds: that as a matter of fact anthracite silt is not coal; and that as a matter of law its operations are not surface coal mining.

### (A) Anthracite Silt is Coal

■ The parties presented expert testimony on the question whether anthracite silt is coal. Stratton C. Schaeffer, a licensed professional engineer specializing in the evaluation and use of energy sources, testified that the Devil's Hole and Hecla operations were "second mining" or "bank mining." He also opined that based on its BTU and carbon content the anthracite silt is coal. Dr. Alan Davis, a Professor at Pennsylvania State University and Director of the Anthracite Division of the Coal Research Section, testified that anthracite silt which is less than 50% ash on a dry basis is coal of anthracite rank. The defendants' own witnesses established that the electric utility customer only accepted anthracite silt with a maximum ash content of 40%. Dr. Davis testified that under American Society for Testing and Materials Standard 888–77 material having the BTU and fixed carbon content of the defendants' anthra-

cite silt is classified as anthracite coal. The trial court, crediting these witnesses, found as a fact that anthracite silt is coal. That finding of fact is not clearly erroneous. Indeed the only evidence to which Devil's Hole and Hecla point, suggesting a different factual conclusion is the evidence that the electric utility customer mixed the silt with other coal to sustain combustion. The court, crediting the testimony of the government's experts, found, however, that with sufficient heat for ignition, anthracite silt is combustible alone, but that Pennsylvania Power and Light Company does not have the technology to burn the silt safely alone. Unquestionably, therefore, Fed.R.Civ.P. 52(a) requires that we accept the trial court's finding that anthracite silt is coal.

### (B) Defendants' Operations are Surface Mining

■ There is no factual dispute over what Devil's Hole and Hecla do. They recover what has been found to be coal from deposits that are not in their original position. Thus their operations fall squarely within the Secretary's definition of surface coal mining operations. They claim, however, that the trial court erred as a matter of law in accepting that definition because 1) the regulation was promulgated in 1982, after this suit was begun; and 2) it is inconsistent with Title IV of the Surface Mining Act.

We hold that the regulations promulgated by the Secretary are clearly consistent with the Act. *Accord, United States v. H.G.D. & J. Co.,* 561 F.Supp. 315 (S.D.W. Va.1983) (dredging of coal sediment from river bottom deemed to be "surface mining" within the reclamation fee provisions). *Cf., Marshall v. Stoudt's Ferry Preparation Co.,* 602 F.2d 589 (3d Cir.1979). Because congressional intent to assess a fee against operators such as Devil's Hole and Hecla is manifest, we need not determine whether the district court erred in relying on the regulations in interpreting the statute.

The district court's holding that the extraction of anthracite silt by Devil's Hole and Hecla is "surface coal mining" subject to an assessment under 30 U.S.C. § 1232 was not based on the contested regulation alone: it was based on the language of the statute. Title VII of the Act defines "surface coal mining operations" to include "excavations, workings, impoundments, dams, ventilation shafts, entryways, *refuse banks*, dumps, stockpiles, overburden piles, spoil banks, *culm banks*, . . . ." 30 U.S.C. § 1291(28)(B). There is no doubt that appellant's activities fall within this definition. Devil's Hole and Hecla contend that this broad definition of "surface coal mining" should apply only to Title V of the Act, which is aimed at preventing environmentally undesirable side effects of present "surface coal mining operations." Title IV, which contains the fee assessment provision, refers to "surface coal mining," not "surface coal mining *operations*." We reject Devil's Hole and Hecla's argument that Congress intended the two phrases to carry distinct meanings. Congress did not provide a definition of "surface coal mining." It is difficult to believe that the drafters of the Act did not intend their definition of "surface coal mining operations" to apply to the fee assessment provision which states: "All operators of coal mining operations . . . shall pay . . . a reclamation fee of 35 cents per ton of coal produced by surface coal mining . . . ." 30 U.S.C. § 1232(a).

■ Devil's Hole and Hecla urge that we should reject the district court's holding that their activities are subject to the reclamation fee because that holding is inconsistent with the environmental purposes of the Surface Mining Act. Removing silt dams, they urge, is an environmentally desirable activity which, consistent with the control features of Title V of the Act, ought to be encouraged rather than taxed. This argument, however, would have us confuse the separate congressional purposes of Title IV and Title V. While the latter is aimed at controlling present and future adverse environmental impacts of mining, the former is designed to fund steps to protect "the environment from continued degradation from past surface and underground mining activities." H.R. No. 95–218 at 136, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Ad. News 593 at 668. The funding method adopted in Title IV is a fee or excise tax on current users of coal: in this case, ultimately, consumers of electric power purchased from Pennsylvania Power and Light Company.

■ Devil's Hole and Hecla, pointing to the 20 cents per ton differential between the excise tax on surface mined and underground mined coal, discern a congressional intention to tax the more environmentally hazardous surface mining activity more heavily. From this they reason that Congress could not have intended to tax such environmentally desirable activities as theirs. This line of argument cannot be accepted for its major premise is defective. The House Report explains:

This differential reflects the committee's cognizance of the present disproportionately high social costs incurred by underground coal mine operators in meeting responsibilities under the Coal Mine Health and Safety Act of 1969 . . . .

H.Rep. at 137, 1977 U.S.Code Cong. & Ad. News at 669. The differential has nothing to do with an environmental preference for underground mining, or with the environment at all.

Thus we hold that the trial court did not err in applying the Secretary's definition of surface mining or in holding that Devil's Hole and Hecla are engaged in that activity.

### IV.

■ The district court, while retaining jurisdiction, deferred to the Office of Surface Mining of the Interior Department for calculation of the sums due. Devil's Hole and Hecla complain of the method of computation adopted by the Office of Surface Mining.

Section 402(e) provides for the recovery of reclamation fees "in any court of competent jurisdiction in any action at law to compel payment of debts." 30 U.S.C. § 1232(e). Devil's Hole and Hecla do not contend that this provision required that the court make the determination of the amount due. Presumably, had there been no dispute over the value of the silt the court would have made the simple calculation by multiplying the undisputed number of tons delivered to Pennsylvania Electric Light Company by the statutory fee of 35 cents per ton. But Devil's Hole and Hecla disputed the value, contending that if taxed at all the silt should be taxed at the lower rate of "10 per centum of the value of the coal at the mine, as determined by the Secretary." 30 U.S.C. § 1232(a). They do not contend that anyone other than the Secretary may make the determination of value in the first instance.

What Devil's Hole and Hecla do contend is that the Secretary's determination is reviewable, in the district court and here, pursuant to the Administrative Procedure Act. 5 U.S.C. § 706. They contend, further, that the Secretary's valuation is arbitrary, capricious and an abuse of discretion.

The Secretary arrived at a valuation f.o.b. mine. The governing regulation so provides. 30 C.F.R. § 870.12(b)(2) (1983). It is entirely consistent with the language of 30 U.S.C. § 1232(a). Since Pennsylvania Power and Light Company is the only consumer of Devil's Hole or Hecla anthracite silt in Pennsylvania and owns most of the land from which it is mined, the Secretary was unable to determine a market price for the product. Devil's Hole and Hecla urged resort to "historical cost," on the theory that only this amount could be passed on to the electric utility's customers. The Secretary rejected use of that figure to determine the "value of the coal at the mine" because of the utility's monopoly position with respect to the supplies of anthracite silt mined by Devil's Hole and Hecla. Instead, the Secretary examined the price of anthracite silt produced at two mines not controlled by Pennsylvania Power and Light Company. The Secretary also rejected the contention that in calculating tonnage the noncombustible content of the silt should be excluded.

We quite agree with the district court that the findings of the Secretary as to price at other sources of anthracite silt are supported by substantial evidence, and that in applying that price in fixing the value of the coal at the mine the Secretary did not act arbitrarily or capriciously.

## V.

The judgments in favor of the United States will be affirmed.