**UGI CORPORATION and Ken Pollock, Inc. and Heavy Media, Inc., Plaintiffs,**

v.

**James G. WATT, Secretary U.S. Department of the Interior and James R. Harris, Director, Office of Surface Mining, Defendants.**

Civ. No. 83–0926.

United States District Court, M.D. Pennsylvania.

Sept. 30, 1985.

E. Barclay Cale, Jr., Frank M. Thomas, Jr., Philadelphia, Pa., for plaintiffs.

James West, First Asst. U.S. Atty., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I

This Court issued a "Memorandum and Order" in this case on June 29, 1984 which, we thought at the time, rendered a final decision in this case. U.G.I. Corporation, Ken Pollock, Inc., and Heavy Media, Inc.

(hereinafter collectively referred to as Plaintiffs) apparently thought so too and framed an appeal to the Third Circuit. The Third Circuit determined, however, that because our Order had not included an assessment as to how much Plaintiffs actually owe the Department of the Interior, there was not a final order in this case from which to appeal. The Third Circuit (per Judge Gibbons) stated:

> Federal Rule of Civil Procedure 54(b) provides that "[w]hen more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." ... The rule provides, further, that in the absence of such a determination "any order or other form of decision, however designated, which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims or parties, *and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims....*" (emphasis ours). See 747 F.2d 893, 894 (3 Cir.1984).

Taking their cue from the emphasized portion of the citation above, Plaintiffs have filed a motion for summary judgment to the effect that the combustible material with which they generate electricity is not produced via strip mining, but is better characterized as the product of underground mining conducted decades ago. If we find that Plaintiffs' position is correct, we would then direct that the material taken by Plaintiffs from four different Luzerne County refuse banks between the fourth quarter of 1977 and the present would be taxable at the rate of $.15 per ton instead of $.35 per ton.[1] We do not so find.

1. 30 C.F.R. § 870.13 provides:
 (a) Surface mining fees. The fee for anthracite, bituminous, and subbituminous coal, including reclaimed coal, is 35 cents per ton unless the value of such coal is less than $3.50 per ton, in which case the fee is 10 percent of the value.
 (b) Underground mining fees. The fee for anthracite, bituminous, and subbituminous coal is 15 cents per ton unless the value of

The question of whether combustible material gleaned from refuse banks composed of by-products of underground mining activity conducted long before the Surface Mining Control and Reclamation Act (30 U.S.C. § 1201 *et seq.*) was enacted is taxable has been definitively addressed by the Third Circuit's decision in *U.S. v. Devil's Hole, Inc.,* 747 F.2d 895 (3 Cir.1984). *Devil's Hole,* supra, leaves little room for argument as to whether anyone engaged in removing combustible material[2] from refuse banks, culm piles, or settlement pits is engaged in strip mining. The *Devil's Hole* Court stated:

> ... Title VII of the Act defines "surface coal mining operations" to include "excavations, workings, impoundments, dams, ventilation shafts, entryways, *refuse banks,* dumps, stockpiles, overburden piles, spoil banks, *culm banks,* ..." 30 U.S.C. § 1291(28)(B). There is no doubt that appellant's activities fall within this definition. See 747 F.2d 895, 898 (3 Cir. 1984).

Similarly, in this case there is no doubt that Plaintiffs' activities can only be described as "surface coal mining operations" since the materials have been removed from the aforementioned Luzerne County sites which Plaintiffs themselves characterize as "silt and culm banks".[3]

 The Plaintiffs base their contention on the very recent Third Circuit decision in *U.S.A. v. Brook Contracting Corp.,* 759 F.2d 320 (3 Cir.1985). *Brook Contracting,* supra, does stand, as Plaintiffs allege, for the proposition that § 402 of the SMCRA should not be given an expansive interpretation. We do not see, however, from our reading of *Brook Contracting* that the Third Circuit has elected to alter the edict announced in *Devil's Hole* a scant seven months earlier. *Brook Contracting* states, in essence, that when calculations are made as to the number of tons that are taxable by the Department of the Interior pursuant to 30 U.S.C. § 1232(a) the Department may tax *only* the tonnage of combustible material produced. This Court fails to see how this determination affects the utility of *Devil's Hole,* which clearly affirmed the right of the Department to tax combustible material removed from refuse banks as a product of a *surface mining operation.* Since there is no allegation in the case *sub judice* that the Department is attempting to tax tonnages of non-combustible material, we find that *Brook Contracting* is inapposite and that the instant case is nearly identical factually to *Devil's Hole* and, hence, controlled by its rationale. We find, as we did in our earlier opinion, that Plaintiffs are conducting surface mining operations at the Luzerne County sites and, therefore, must pay the $.35 per ton duty prescribed by the SMCRA.[4]

## II

The Plaintiffs also seek judgment that they should not be assessed interest on any unpaid taxes this Court finds them to owe to the Department of the Interior. They cite *Thomas v. Duralite Co., Inc.,* 524 F.2d 577, 589 (3d Cir.1975), for the proposition that "[I]nterest is not to be recovered merely as compensation for money withheld but, rather, in response to considerations of fairness. It should not be imposed when its exaction would be inequitable...."[5] Plaintiffs then note that an-

---

such coal is less than $1.50 per ton, in which case the fee is 10 percent of the value.

**2.** We say "combustible material" rather than coal since the Surface Mining Control and Reclamation Act does not include a definition of coal.

**3.** See Docket Item 35 at page 1.

**4.** This rate had been assessed by the Office of Surface Mining in a document (Docket Item 33) filed with this Court on April 22, 1985. In that document OSM relied on Plaintiffs' own ton-

nage reports to arrive at a calculation that Plaintiffs owed $486,164.00 in reclamation fees and interest if that amount was paid on or before April 30, 1985. It was made clear that if this amount was not paid additional interest would accrue. 30 U.S.C. §§ 1232(a) and (e) grant power to the Secretary of Interior to collect said fees and interest.

**5.** *Id.* at page 13.

other Third Circuit decision, *Feather v. United Mine Workers of America*, 711 F.2d 530 (3 Cir.1983), delineates a four part test to determine whether an award of pre-judgment interest is appropriate. That test inquires:

(1) Whether the claimant has been less than diligent in prosecuting the action;

(2) Whether the defendant has been unjustly enriched;

(3) Whether an award would be compensatory; and

(4) Whether countervailing equitable considerations militate against a surcharge.

*Feather*, supra, at 540.

Applying this test to the instant case, we find that: (a) the claimant has been diligent in prosecuting this action since Plaintiffs' action for a declaratory judgment as to whether culm bank refuse is to be considered "coal" antedated Defendants' action to collect reclamation fees; (b) the Defendants (Plaintiffs in the garbled procedural posture of this case since consolidation) have not been unjustly enriched because, had they done as they were authorized to do and simply paid the fees and passed the cost along to their customers in the form of a fuel adjustment clause, they would have been in the same economic situation they now find themselves; (c) any award here is not compensatory in character since there is no damages question before this Court but, rather, a question as to the validity of a tax; (d) countervailing equitable considerations do militate against the surcharge here in the sense that it was not made utterly clear that Plaintiffs' operations constituted a surface mining operation until *Devil's Hole* was decided in 1982.[6]

■ These findings notwithstanding, we cannot agree that the Plaintiffs should be discharged from their duty to pay statutory interest. As the Defendants have not-

ed, the SMCRA has, since its enactment in 1977, included language designating that "[A]ny portion of the reclamation fee not properly or promptly paid pursuant to this section shall be recoverable, *with statutory interest*, from coal mine operators, in any court of competent jurisdiction in any action at law to compel payment of debts." (emphasis ours). See 30 U.S.C. § 1232(e). Defendants argue further that, although the statutory rate has changed as new regulations were promulgated by the Secretary of Interior and published in the Federal Register, said changes in no way exempt Plaintiffs from their duty to pay statutory interest on any reclamation fees not promptly remitted. Defendants cite *Federal Crop Insurance v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), for the proposition that:

Just as everyone is charged with knowledge of the Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents ... regardless of actual knowledge of what is in the Regulations or of the hardships resulting from innocent ignorance.

We think *Federal Crop Insurance*, supra, to be good law today and conclude that Plaintiffs herein are charged with knowledge of Congressional mandates as expressed in the Federal Register and the Code of Federal Regulations.

We think, too, that Plaintiffs unreasonably withheld monies which should have been paid to the Department of the Interior pending the outcome of this litigation. We think the government is correct in its contention that this situation is much more analagous to a tax claim than to an action to compel payment of an unliquidated debt.[7] Therefore, the appropriate course of conduct for the Plaintiffs to follow here would have been to pay the reclamation fees they had been assessed and then to

---

**6.** Plaintiffs' brief in support of its motion for summary judgment correctly points out that there was conflicting case law as to whether operations similar to the Luzerne County operations we now consider constituted "surface min-

ing" before the *Devil's Hole* decision. See Docket Item 35 at page 15.

**7.** See Docket Item 43 at page 13.

proceed with the litigation. This would have insulated Plaintiffs from the accrual of interest.

It would hardly seem consistent with the overall purpose of the SMCRA to allow Plaintiffs to now pay only the reclamation fees they were assessed after withholding these sums since June of 1983. The Defendants have referred this Court to a recent decision of the Fourth Circuit, *United States v. S.S. (Joe) Burford, Inc.*, 761 F.2d 173 (4 Cir.1985), which contains the following rationale.[8]

> ... refusal to award prejudgment interest on delinquent reclamation fees jeopardizes the Congressional program to revitalize abandoned mine land by restricing the Secretary's ability to assure timely collection of reclamation fees. The regulation in question, 30 C.F.R. § 870.-15(d), was duly promulgated and has the force of law.

We find the 4th Circuit's view logical and persuasive and we think we would be sending an inappropriate message to other concerns similarly situated to the instant Plaintiffs if we allow them to avoid payment of statutory interest in a situation where the Department has been deprived of money it needs to fulfill the purpose Congress intended—the revitalization of abandoned mine land—for well over two years.

In sum, we find that no equitable argument, however persuasive, can prevail over an argument founded upon a federal statute. That is the situation in this case and this Court would be derelict in its duty were it to ignore the provisions of said statute, Plaintiffs' obligation to comply therewith, and the deleterious effect which granting the relief Plaintiffs seek would likely have on the Secretary's ability to collect these reclamation fees. The Plaintiffs clearly must be made to pay statutory interest for these reasons.

### III

▮ Finally, Plaintiffs' contend that, if they are found to owe the interest on these fees, they should pay interest at the legal rate recognized in the Commonwealth of Pennsylvania. Here, again, we must disagree. The Defendants' argument to the effect that Plaintiffs' request to pay any interest owed at the Pennsylvania rate is actually a regulatory challenge is well-founded since there are federal regulations which delineate what the interest rate should be. See 30 C.F.R. § 870.15(c). This interest rate has been indexed to a rate established by the Department of the Treasury since April 1, 1983. Thus, we have a question as to whether the federal regulations preempt Pennsylvania's established statutory interest rate. In other words, the Plaintiffs are challenging whether the Secretary may promulgate a regulation which establishes a higher interest rate for past due reclamation fees than Pennsylvania provides. Such regulatory rule-making challenges may only be brought in the United States District Court for the District of Columbia. See *Drummond Coal Company v. Watt*, 735 F.2d 469, 472 (11 Cir.1984). Thus, we do not have jurisdiction over such a rule-making dispute. Moreover, we think it an elementary concept that when a federal agency charged by the United States Congress with accomplishing a task perceived as a public policy—here the revitalization of land made useless by the ravages of the coal mining industry—establishes regulations to achieve that task, any state statutes which conflict with said regulation must be subordinated to it absent a showing that it is arbitrary and capricious. *In re Surface Mining Regulation Litigation*, 456 F.Supp. 1301, 1308 (D.C.D.C.1978). Plaintiffs have advanced no argument which would lead this Court to believe that the interest rate established in 30 C.F.R. § 870.15(c) is an arbitrary or capricious exercise of the power Congress has vested in the Department of Interior. To the contrary, the provision for interest penalties in excess of the somewhat antiquated (in view of commercial interest rates of the last decade) 6% utilized by Pennsylvania seems

8. *Id.* at page 12.

a very rational tool for forcing compliance with the SMCRA. Thus, we find that Plaintiffs owe the Department of Interior interest at the rates set by the Secretary. An appropriate *Order* follows.

### ORDER

AND NOW, this 30th day of September, 1985, IT IS ORDERED as follows:

1. Plaintiffs' motion for summary judgment herein is denied.

2. Defendants' cross-motion for summary judgment is granted.

3. Plaintiffs are directed to pay to the Office of Surface Mining, U.S. Department of the Interior the sum of $503,641.00.

4. In accordance with calculations provided by the Office of Surface Mining (See attached assessment of August 27, 1985), the pro rata shares of this obligation are:

| | Fees Due | Interest to 9/30/85 | Total |
|---|---|---|---|
| Anthracite Loading | $ 43,967 | $22,758 | $66,725.00 |
| Pollock, Ken Inc. | 178,830 | 96,055 | 274,885.00 |
| Pollock, Ken | 23,648 | 12,667 | 36,315.00 |
| Heavy Media, Inc. | 74,465 | 48,250 | 122,715.00 |
| Pollock, Ken | 1,691 | 1,310 | 3,001.00 |

5. Each party shall bear its own costs in this action.

6. Judgment in Defendants' favor is hereby entered and the Clerk of Courts is directed to close this case.

## United States Department of the Interior

### OFFICE OF SURFACE MINING

Penn Traffic Bldg., Room 360
319 Washington Street
Johnstown, PA 15901
August 27, 1985

MEMORANDUM

TO: Beverly Perry, Attorney
OSM Solicitors, DC
/s/ Joseph F. Geissinger

THROUGH: Joseph F. Geissinger, Area Office Manager
Johnstown Area Office
/s/ Isaac E. Isaacson

FROM: Isaac E. Isaacson, Auditor
Johnstown Area Office

SUBJECT: Reclamation Fees and Interest Due from Anthracite Loading; Pollock, Ken; Pollock Ken, Inc.; and Heavy Media, Inc.

Per your request, we have performed a review to determine Reclamation Fees and Interest due OSM for the period 10/1/77 thru 6/30/85. Interest was computed through 9/85 because of trial date of September 1985.

Our source in our review was the Computer Sums Reported from our Denver Finance Center dated 8/26/85. Please note we have audited the above named companies for the period 10/1/77 thru 12/31/84.

The company totals are as follows, with quarter breakdown attached;

| Company | ID# | Tons | Fees Due | Int. 9/85 | Total Due |
|---|---|---|---|---|---|
| A) Anthracite Loading | 3601698–02 | 125,621 | $ 43,967 | $ 22,758 | $ 66,725 |
| B) Pollock Ken, Inc. | 3601698–01 | 510,943 | 178,830 | 96,055 | 274,885 |
| C) Pollock, Ken | 3607124–01 | 67,564 | 23,648 | 12,667 | 36,315 |
| D) Heavy Media, Inc. | 3605094–01 | 212,756 | 74,465 | 48,250 | 122,715 |
| E) Pollock, Ken | 3606366–01 | 4,832 | 1,691 | 1,310 | 3,001 |
| TOTAL | | 921,716 | $322,601 | $181,040 | $503,641 |

Please phone if you have any questions, FTS 723–9223.