**UNITED STATES of America, Appellant,**

v.

**Warren TROUP, d.b.a. Warren Troup Coal Company, Appellee.**

**No. 86–1409.**

United States Court of Appeals, Third Circuit.

Argued Jan. 21, 1987.

Reassigned April 24, 1987.

Decided June 18, 1987.

---

F. Henry Habicht II, Asst. Atty. Gen., Edward S.G. Dennis, Jr., U.S. Atty., Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., Jacques B. Gelin, Maria A. Iizuka (argued), Dept. of Justice, Washington, D.C., for appellant.

Edward E. Kopko (argued), Law Office of James J. Curran, Pottsville, Pa., for appellee.

Before SEITZ, BECKER, MANSMANN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The United States appeals from the final judgment of the district court awarding it $19,526.80, which represents only 55% of the reclamation fees it sought against Warren Troup under § 402(a) of the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. § 1232(a) (1982). We have jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

Appellee Troup operates a surface coal mining business in the anthracite coal fields of Pennsylvania. Troup blasts large holes on the surface of abandoned mines and then excavates pillars of coal that remain from previous underground mining. The product that Troup removes, called "run-of-mine," contains coal, rock and other debris. Troup sells the run-of-mine ma-

terial to an anthracite coal preparation plant called a breaker. The breaker crushes and cleans it and resells the processed product for a higher price.

The Surface Mining Control and Reclamation Act of 1977 (SMCRA) requires coal operators to pay the Secretary of the Interior "a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining...." 30 U.S.C. § 1232(a). The moneys collected go into the Abandoned Mine Reclamation Fund and are used, among other things, to fund restoration of lands harmed by past coal mining activities. *See* 30 U.S.C. § 1231(c)(1) (1982). Troup has never paid any reclamation fees.

In December 1984 the government filed a complaint in the Eastern District of Pennsylvania seeking to recover reclamation fees and interest due under the SMCRA. The government contended that the reclamation fee should be calculated on the total tonnage of the material Troup sold to the processor as mandated by the terms of a regulation adopted by the Secretary. The accuracy of the coal tonnage totals was stipulated by the parties. Troup agreed that a reclamation fee was due, but argued that a subtraction should be made for "the weight of rock, clay, dirt and other debris." [1]

In arriving at its award, the district court first found that the testimony of the government's expert witness established that the material mined by Troup was combustible and qualified as coal under standards set by the American Society for Testing and Materials (ASTM). The court, however, rejected the government's contention that Troup should pay reclamation fees on his product as mined. Instead, the court stated that its decision was mandated by *United States v. Brook Contracting Corp.*, 759 F.2d 320 (3rd Cir.1985),[2] which it read to require that reclamation fees may only be charged on material that is "(a) combustible; (b) qualifies as coal under ASTM standards; and (c) excludes the weight of rock, clay, dirt and other debris." *United States v. Troup*, No. 84–6079 (E.D.Pa. April 25, 1986) (unpublished bench opinion). The district court concluded that "the liability of Troup as the first seller should be limited to the amount of coal that is commercially useable by the ultimate user." *Id.* Accordingly, the court only found Troup liable for $19,526.80, which was 55% of what the government had sought.[3] This appeal followed.

II.

On appeal the government contends that in deciding that a reclamation fee may only be charged on the weight of the coal after it has been cleaned by the purchaser, the district court was invalidating a national regulation, which it did not have jurisdiction to do.

■ A preliminary issue must be addressed, i.e., whether the government's subject matter challenge to Troup's attack on the regulation may be entertained in view of our decision invalidating the regulation in *Brook Contracting Corp.* and our Internal Operating Procedures. Chapter 8C provides:

C. Policy of Avoiding Intra-Circuit Conflict of Precedent.

It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent

---

1. In his answer to the government's complaint, Troup had argued that he did not produce anthracite coal by surface mining as defined by the applicable laws and regulations. This contention was rejected by the district court and is not renewed here.

2. *Brook Contracting* explicitly rejected the challenged regulation ("To the extent that the government interprets § 870.12(b) to authorize imposition of the reclamation fee on the noncoal material mined by appellants here, we hold this regulation exceeds the scope of 30 U.S.C.

§ 1232(a) and is therefore invalid." 759 F.2d at 327), distinguishing itself from an earlier case of this court that had upheld it. *See United States v. Devil's Hole*, 747 F.2d 895, 899 (3rd Cir.1984) ("The governing regulation ... is entirely consistent with the language of 30 U.S.C. § 1232(a)").

3. The district court found that 55% was the most likely percentage of useable coal on the Troup pile.

panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.

We note at the outset that no subject matter jurisdictional attack was either raised or addressed in *Brook Contracting Corp.* or, indeed, in *Devil's Hole.* Under these circumstances, is this panel free under our IOP to decide that jurisdictional issue? We have no doubt that we are, particularly in view of the fundamental importance of that factor in the federal court system. While our IOP serves the worthy purposes of providing legal stability and predictability, it cannot override a Congressional mandate as to subject matter jurisdiction, at least where the issue has not been directly confronted by our court.

Beyond any IOP constraint, the judicial reality is that if we speak without subject matter jurisdiction, our utterances are tainted precedent. As the Court said in *Alabama Hospital Association v. United States,* 656 F.2d 606 (U.S.Ct.Claims 1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982), in considering a related situation, "[A] lack of subject matter jurisdiction goes to the very power of a court to hear a controversy; ... [the] earlier case can be accorded no weight either as precedent or as law of the case."

If we lack subject matter jurisdiction to address the merits of the regulation and, nevertheless, consider the merits of *Devil's Hole* and *Brook Contracting Corp.,* we could justifiably be accused of compounding dicta.

## III.

We proceed, then, to address the government's contention that the district court lacked subject matter jurisdiction to decide that, despite *Brook Contracting Corp.,* the national regulation here involved was unenforceable.

National regulations establishing procedures for computing reclamation fees under section 1232(a) were promulgated by the Secretary of the Interior in 1977:

(a) The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the product of in situ mining.

(b) The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator.

30 C.F.R. § 870.12 (1978). Because these regulations were interpreted inconsistently by local representatives of the Office of Surface Mining, and caused some confusion among coal mining operators, the Secretary proposed revised regulations in 1981. In order "to clarify the point in time of fee determination as well as the value and weight parameters for calculating reclamation fees," 47 Fed.Reg. 28574, 28577 (June 30, 1982), the following was added:

(3) The weight of each ton shall be determined by the actual gross weight of the coal.

(i) Impurities, including water, that *have not* been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator *shall not* be deducted from the gross weight [emphasis in original].

30 C.F.R. § 870.12(b)(3) (1986).

Judicial review of regulations promulgated under the SMCRA is provided for in 30 U.S.C. § 1276(a)(1):

Any action by the Secretary promulgating national rules or regulations ... shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the

petition is based solely on grounds arising after the sixtieth day.

Although this case was originally brought by the government as a collection action, Troup's defense that he need only pay reclamation fees on the weight of the coal after it has been cleaned by the breaker runs directly counter to promulgated regulations. In effect, Troup is challenging those regulations that specifically provide that "impurities ... that *have not* been removed prior to the time of initial bona fide sale ... *shall not* be deducted from the gross weight" subject to the reclamation fee. *See* 30 C.F.R. § 870.12(b)(3). Although Troup argued in his brief that his case did not involve a judicial review of the regulations, but rather an interpretation of the word "coal" as used in the Act and regulations, his counsel conceded at oral argument that he was in fact attacking these regulations.

We find Troup's attack on the regulation to be the type of challenge to national regulations contemplated by the jurisdictional statute, 30 U.S.C. § 1276(a)(1). *Cf. UGI Corp. v. Watt,* 644 F.Supp. 16 (M.D. Pa.1985) (plaintiffs' argument that they should pay any interest due on reclamation fees at the legal rate recognized in Pennsylvania was actually a regulatory challenge since there were federal regulations delineating exactly what the interest rate should be, *see* 30 C.F.R. § 870.15(c)). Our conclusion is not affected by the fact that Troup's challenge arose as a defense to a collection action.

Under section 1276(a)(1), jurisdiction to rule on such challenges rests exclusively in the United States District Court for the District of Columbia. "If Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word 'exclusive' in the statute providing a forum for judicial review." *Getty Oil Co. (Eastern Operations) v. Ruckelshaus,* 467 F.2d 349, 356 (3rd Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973). Section 1276(a) clearly designates the United States District Court for the District of Columbia as the forum for challenging national regulations promulgated by the Secretary.

The plain language of section 1276(a)(1), as well as the legislative history of the SMCRA further support our conclusion that Congress intended that jurisdiction to hear challenges to national regulations promulgated pursuant to the Act rest exclusively in the federal courts of the District of Columbia. Section 1276(a)(1), provides that national regulations "*shall* be subject to judicial review in the United States District Court for the District of Columbia." (Emphasis added) In using the mandatory word "shall" Congress intended that national regulations be reviewed only in the District of Columbia courts. The legislative history of the Act, indicating that Congress sought to establish uniform national standards, *see* S.Rep. No. 95–128, at 49; H.R.Rep. No. 95–218, at 58, *reprinted in* 1977 U.S. Code Cong. & Ad. News 593, 596, is further indication that Congress meant the District of Columbia federal courts to be the exclusive forum.

Nor is our conclusion altered by the use of the word "promulgating" in 30 U.S.C. § 1276(a)(1). We think Congress intended to cover more than the procedure regulating the adoption of the regulation. As the Committee on Interior and Insular Affairs of the House of Representatives remarked when reporting out its bill,

[u]nder the committee amendment, the Secretary's actions national in scope (such as promulgation of general regulations) will be subject to review in the U.S. Court of Appeals for the District of Columbia while actions relating to a particular State's program are appealable to the U.S. Court of Appeals in [the] Circuit in which the State is located.

H.R.Rep. No. 95–218, 95th cong. 1st Sess. 70, *reprinted in* 1977 U.S. Code Cong. & Ad. News 593, 608; *see also id.* at 153, 684 (quoting letter from Secretary of Interior: "Review of orders or decisions of national scope ... should be in the U.S. Court of Appeals for the District of Columbia."); H.R.Rep. No. 95–493, 95th Cong., 1st Sess. 111, *reprinted in* 1977 U.S. Code Cong. &

Ad. News 728, 743 (conference report). *Cf. Getty Oil Co. (Eastern Operations) v. Ruckelshaus,* 467 F.2d at 353 n. 4 (exclusive jurisdiction found where statute provided, "[a] petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard ... may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 1857a–5.)

Our position is supported by two of the three circuits that have addressed the question of the exclusivity of the federal courts of the District of Columbia's jurisdiction over challenges to regulations promulgated pursuant to the SMCRA. In *Drummond Coal Co. v. Watt,* 735 F.2d 469 (11th Cir. 1984), the plaintiff coal company sought declaratory and injunctive relief from the same regulation that Troup challenges defensively. The United States Court of Appeals for the Eleventh Circuit held that "Section 1276(a)(1) vests in the United States District Court for the District of Columbia exclusive jurisdiction over this case." *Id.* at 470.

The United States Court of Appeals for the Fourth Circuit has also held that section 1276(a)(1) vests exclusive jurisdiction in the federal courts of the District of Columbia. In *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (1983), the court held, that "the district court for the Southern District of West Virginia had no jurisdiction to hear what amounted to an attack on" a federal regulation. *Id.* at 802. The court also rejected the plaintiff's contention that the district court had incorrectly characterized its suit as an attack on a federal regulation. *See id.* at 799. *See also Commonwealth of Virginia ex rel. Virginia Department of Conservation v. Watt,* 741 F.2d 37 (4th Cir.), *cert. granted,* 469 U.S. 979, 105 S.Ct. 379, 83 L.Ed.2d 315 (1984), *cert. dismissed,* 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985) (reaffirming its position on the exclusivity of the District of Columbia courts' jurisdiction).[4]

4. Two district courts in the Third Circuit have also held that section 1276(a)(1) confers exclusive jurisdiction in the District of Columbia district court. *See Reading Anthracite v. Office of*

The United States Court of Appeals for the Sixth Circuit is the only circuit court that has held that section 1276(a)(1) permits review of challenges to national regulations in federal courts other than those in the District of Columbia. *See Holmes Limestone Co. v. Andrus,* 655 F.2d 732 (6th Cir.1981), *cert. denied,* 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982). The court rested its holding on the fact that the word "only," which had appeared in both the Senate and House versions of the SMCRA, was omitted in the enacted conference committee bill. The court thus concluded that the jurisdiction of the District of Columbia courts was concurrent with that of the district courts in other circuits. We disagree with this analysis, and find our reasoning above to be more consistent with legislative intent. *See also Drummond Coal Co. v. Watt,* 735 F.2d at 474; *Commonwealth of Virginia,* 741 F.2d at 41 n. 5 (explicitly rejecting the Sixth Circuit's reasoning).

■ We therefore hold that the district court for the Eastern District of Pennsylvania did not have subject matter jurisdiction to recognize Troup's defense that he should be charged reclamation fees only on "useable" coal. Because it runs directly counter to a promulgated regulation, this defense was, in fact, a regulatory challenge and, as such, could only be brought in the United States District Court for the District of Columbia. The provisions of the regulation in question must therefore be enforced, and the award of reclamation fees be based on the gross tonnage of Troup's coal at the time he sells it to the breaker, including the weight of "impurities ... that *have not* been removed prior to the time of initial bona fide sale...." *See* 30 C.F.R. § 870, 12(b)(3).

We are not called upon to decide what remedies, if any, are now available to Troup in the United States District Court for the District of Columbia. Nor is any

*Surface Mining Reclamation and Enforcement,* No. 80–0667 (E.D.Pa. October 8, 1980) (unpublished opinion); *UGI Corp. v. Watt, supra.*

constitutional challenge made to section 1276(a)(1) as here construed.

### IV.

Accordingly, the judgment of the district court will be reversed, and the case remanded with instructions to enter judgment based on application of the regulation codified at 30 C.F.R. § 807.12(b).