**HOLMES LIMESTONE CO., et al., Plaintiffs-Appellants,**

v.

**Cecil B. ANDRUS, et al., Defendants-Appellees.**

**No. 80–3666.**

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1981.

Decided Aug. 6, 1981.

Rehearing Denied Sept. 29, 1981.

J. C. Johnston, III, J. Douglas Drushal, Critchfield, Critchfield, Critchfield & Johnston, Wooster, Ohio, for plaintiffs-appellants.

Marcus P. McGraw, Mark Squillace, Dept. of Interior, Washington, D. C., Myra Spicker, Indianapolis, Ind., Dirk D. Snel, Peter R. Steenland, Jr., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before WEICK and MERRITT, Circuit Judges and ENSLEN, U. S. District Judge.*

WEICK, Circuit Judge.

This appeal is from a judgment of the District Court for the Northern District of Ohio, Eastern Division, dissolving a preliminary injunction which it had issued in favor of the appellants and then dismissing their complaint for declaratory and injunctive relief for lack of jurisdiction. In their complaint, the appellants had challenged the construction and application by the Secretary of Interior of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201, *et seq.* and Regulations with respect to appellants' mining operations on farms owned by Amish people near their private family burial plots which farms had been leased by them to appellant, Holmes Limestone, for the mining of coal in Holmes County, Ohio. Holmes Limestone contended that if said Act and Regulations were applicable and enforced in the manner attempted by the Secretary, this would constitute a taking of its property without due process of law in violation of the Fifth Amendment to the Constitution and would deprive it of the Equal Protection of the Laws in violation of the Fourteenth Amendment.[1]

After granting the preliminary injunction in favor of Holmes, the district court, when it completed hearing the case on its merits, reluctantly decided that it had no jurisdiction to hear appellants' case, holding that the United States District Court for the District of Columbia had exclusive jurisdiction to hear it. In our opinion, the district court erred in holding that it was without jurisdiction and should have heard and decided the case on its merits. We reverse and remand.

Jurisdiction of the court was based on 28 U.S.C. §§ 1331, 2201, 2202; 30 U.S.C. § 1276(a)(1) and violations of the Fifth and Fourteenth Amendments to the Constitution.

## I. Background

The Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201, *et seq.*, was enacted by the 95th Congress and signed into law on August 3, 1977. The Act provides a two-tiered system of regulation whereby an "interim" or "initial" program is to be followed by a system of permanent regulation.

Section 201 of the Act (30 U.S.C. § 1211) creates the Office of Surface Mining Reclamation and Enforcement (OSM) within the Department of the Interior. The Secretary of the Interior, through the OSM and its Director, is given the responsibility of administering and implementing the Act (30 U.S.C. § 1211(c)).

The Secretary is directed by 30 U.S.C. § 1251(a) to promulgate regulations governing the initial program and by § 1251(b) to promulgate the permanent regulatory program. Section 1251(a) directs the Secretary to promulgate the interim regulations "based on and incorporating the provisions set out in section 1252(c) of this title."

Section 1252 provides, in pertinent part:

§ 1252. Initial regulatory procedures—State regulation.

---

* The Honorable Richard A. Enslen, United States District Judge, Western District of Michigan, sitting by designation.

1. Ohio Mining and Reclamation Association is a trade association composed of coal miners in Ohio and in which Holmes is a member.

(a) No person shall open or develop any new or previously mined or abandoned site for surface coal mining operations on lands on which such operations are regulated by a State unless such person has obtained a permit from the State's regulatory authority.

### Interim standards

(b) All surface coal mining operations on lands on which such operations are regulated by a State which commence operations pursuant to a permit issued on or after six months from August 3, 1977, shall comply, and such permits shall contain terms requiring compliance with the provisions set out in subsection (c) of this section. Prior to final disapproval of a State program or prior to promulgation of a Federal program or a Federal lands program pursuant to this chapter, a State may issue such permits.

### Full compliance with environmental protection performance standards

(c) On and after nine months from August 3, 1977, all surface coal mining operations on lands on which such operations are regulated by a State shall comply with the provisions of subsections (b)(2), (b)(3), (b)(5), (b)(10), (b)(13), (b)(15), (b)(19), and (d) of section 1265 of this title or, where a surface coal mining operation will remove an entire coal seam or seams running through the upper fraction of a mountain, ridge, or hill by removing all of the overburden and creating a level plateau or a gently rolling contour with no high-walls remaining, such operations shall comply with the requirements of section 1265(c)(4) and (5) of this title without regard to the requirements of section 1265(b)(3) or 1265(d)(2) and (3) of this title, with respect to lands from which overburden and the coal seam being mined have not been removed. *Provided, however,* That surface coal mining operations in operation pursuant to a permit issued by a State before August 3, 1977, issued to a person as defined in section 1291(19) of this title in existence

prior to May 2, 1977 and operated by a person whose total annual production of coal from surface and underground coal mining operations does not exceed one hundred thousand tons shall not be subject to the provisions of this subsection except with reference to the provision of section 1265(d)(1) of this title until January 1, 1979.

Section 1252(e) provides for a federal enforcement program which operates during the interim period; that period during which federal and state enforcement procedures are co-existent. Section 1252(e)(1) gives the Secretary enforcement power over the interim standards of subsections (b) and (c) of Section 1252. As noted in the portion of § 1252(c) set out above, the interim jointly administered programs must comply with § 1265(b)(2), (b)(3), (b)(5), (b)(10), (b)(15), (b)(19) and (d).

On December 13, 1977, the Secretary promulgated the interim regulations. (42 Fed. Reg. 62677) These regulations are contained in 30 C.F.R. Parts 710 through 725 (1980). By their own terms, based upon the statutory grants of authority, the regulations are effective until permanent programs are approved in accordance with sections 503, 504, or 523 of the Act. In the Secretary's recitation of his authority, he states as follows:

§ 710.3 Authority.

(a) The Secretary is directed to implement an initial regulatory program within six months after the date of enactment of the Act in each State which regulates any aspect of surface coal mining under one or more State laws until a State program has been approved or until a Federal program has been implemented.

### (30 C.F.R. § 710.3)

These regulations implement the above listed provisions of 30 U.S.C. § 1265, within the authority granted to the Secretary under 30 U.S.C. § 1252(c).

As stated above, interim enforcement of these standards is jointly handled by the OSM and the respective states. In fact, 30 C.F.R. § 720.11 states as follows:

§ 720.11 Enforcement authority.

Nothing in the Act or these regulations shall be interpreted to preclude a State from exercising its authority to enforce State law, regulations, and permit conditions, unless compliance with the State law, regulations, or permit condition will preclude compliance with these regulations.

In the instant case, Ohio's interim enforcement program had been approved by the Secretary and Ohio was enforcing the interim standards of 30 C.F.R. Parts 710 through 725.

An interesting event, however, occurred on December 31, 1979. On that date, by a notice published in the Federal Register (44 Fed.Reg. 77445) and by amendment to 30 C.F.R. § 701.1(b)(3), the Secretary declared that the regulations of 30 C.F.R. Part 761 would be applicable during the interim regulatory program. The regulations of Part 761 implement the standards and requirements of 30 U.S.C. § 1272 and are part of the permanent regulatory program authorized by 30 U.S.C. § 1251(b).

30 U.S.C. § 1272(e) provides, *inter alia*:

Prohibition on certain Federal public and private surface coal mining operations

(e) After August 3, 1977, and subject to valid existing rights no surface coal mining operations except those to which exist on August 3, 1977, shall be permitted—

.   .   .   .   .

(5) within three hundred feet from any occupied dwelling, unless waived by the owner thereof, nor within three hundred feet of any public building, school, church, community, or institutional building, public park, *or within one hundred feet of a cemetery.* Pub.L. 95–87, Title V, § 522, Aug. 3, 1977, 91 Stat. 507. (emphasis added.)

30 C.F.R. § 761 provides, *inter alia*:

§ 761.5 Definitions.

For the purposes of this part:

*Cemetery* means any area of land where human bodies are interred.

[44 FR 15341, Mar. 13, 1979, as amended at 44 FR 77447, Dec. 31, 1979]

By this amendment, the Secretary sought to enlarge and extend the coverage so as to embrace private family burial plots not theretofore regarded as cemeteries.

It is the application of 30 U.S.C. § 1272, as implemented by 30 C.F.R. § 761.5, to the appellants during the interim program which is challenged.

## II. Facts

The facts as found by the district court were not in dispute. The answer of the defendants admitted thirty-five of the plaintiff's thirty-seven factual allegations.

Holmes Limestone is engaged in the mining of coal in Holmes County, Ohio, as well as in surrounding counties. It is a closely held corporation which employs 80 persons and derives 90 percent of its coal production from Holmes County.

There is a very high concentration of Amish people living in Holmes County. The Amish bury their dead on their own farms in small, private family burial plots. These small family burial plots are usually located on the family farm or on the farm of a close relative on the top of a hill. There are hundreds of these small burial plots throughout Holmes County, Ohio. These small private burial plots can hardly be called a cemetery as members of the public are not buried there.

There are two such farms with family burial plots involved in this appeal. One is owned by Melvin H. Raber, the other by Noah M. Beachy. Holmes Limestone entered into written leases with the owners to mine coal on these farms on April 12, 1979 and May 2, 1979, respectively. These leases do not mention the burial plots, but do require that operations comply with the law of State of Ohio.

Holmes Limestone has developed quite a favorable reputation in Holmes County as a careful and conscientious coal mine operator. The company is highly trusted in the county and has been mining on Amish lands for 30 years. The company is known for its reclamation procedures and for its care and concern in all aspects of its operation. It is

also undisputed that the Amish landowners herein are strongly desirous of having Holmes Limestone mine within 25 feet of their family burial plots, as it has been repeatedly demonstrated it can be safely done without injury to the graves and they do not want to lose the coal which can be mined.

During the interim program, Ohio coal operators are required to apply to the Ohio Department for Natural Resources, Division of Reclamation for a permit. (Ohio Rev. Code § 1513.01 *et seq.*; 30 U.S.C. § 1252(a)). In September, 1979, Holmes Limestone applied to Charles Call, Chief of the Ohio Division of Reclamation, (Ohio Department of Natural Resources) for a permit to mine on the Beachy farm. The permit was granted on March 15, 1979. The permit prohibited mining within 100 feet of the burial plot in accordance with Ohio Administrative Code § 1501: 13–19–03–(3).

In December, 1979, Holmes Limestone applied to Chief Call for an amendment to the permit which would allow it to mine within 100 feet of the burial plot. On January 4, 1980, Chief Call issued an order denying the application for an amendment to the permit.

Following Ohio's administrative procedure, Holmes Limestone appealed that order to the Ohio Reclamation Board of Review. A hearing was held before the Board on March 5, 1980. On March 27, 1980, the Board ruled that the small private family burial plot on the Beachy farm was not a "cemetery" within the meaning of § 1501:13–19–03(3) of the Ohio Administrative Code. The Board ordered that Chief Call issue the amended permit to Holmes Limestone allowing it to mine within 100 feet of the plot but no closer than 25 feet. (App. 13–15).

Prior to issuing the amended permit, Chief Call received oral instructions from John McDowell, Solicitor of the Office of Mining, Reclamation and Enforcement (OSM) not to issue the permit. On April 16, 1980, Call received a letter from Edgar Imhoff, Regional Director of the OSM which threatened enforcement action against Holmes Limestone and informed Call that the issuance of the permit would be inconsistent with Ohio's responsibilities for implementation of the interim program under the Federal grant. (App. 16). All of this was apparently an interference with Ohio's authorized procedures.

On May 1, 1980, faced with these conflicting orders, Chief Call appealed the decision of the Ohio Reclamation Board of Review to the Franklin County (Ohio) Court of Common Pleas and requested a stay of the Board's order to issue the permit. Following a hearing on May 16, 1980, the Common Pleas Court denied the motion for a stay and on May 19, 1980, issued an order authorizing the amended permit, which was then issued.

On December 18, 1979, Holmes Limestone applied to the Ohio Division of Reclamation for a permit to mine on the Raber property. As with the Beachy property, the permit allowed mining up to within 100 feet of the burial site located on the property. On April 25, 1980, Holmes Limestone applied for an amended permit to allow it to mine up to within 25 feet of the plot. The process was held up in the Ohio Division of Reclamation due to the filing of the instant case in district court. The amended permit was, however, eventually issued in October, 1980. Holmes Limestone has apparently been conducting mining operations in the area between 25 and 100 feet of the burial plot since that time.

As noted above, the amended permit to mine on the Beachy farm was issued on May 19, 1980. Holmes Limestone thereafter commenced operations. On June 6, 1980, Holmes Limestone and the Ohio Mining and Reclamation Association filed suit in the United States District Court seeking to enjoin the OSM from enforcing 30 U.S.C. § 1272(e)(5) and 30 C.F.R. § 761.5 against them and for declaratory relief.

On June 11, 1980, Holmes Limestone was served with a "notice of violation" for mining within 100 feet of the burial plot on the Beachy property.

As regards the declaratory relief, appellants sought to have 30 C.F.R. § 761.5 declared arbitrary, capricious and inconsistent with the Act as written and applied; to have the statute and the regulation construed not to apply to small private family burial sites located on private property; and in the alternative, to have the statute and/or the regulation declared unconstitutional. The action also sought a preliminary injunction.

At the trial, there was not an iota of evidence offered by the Secretary that the mining near the private burial plots permitted by the State would result in any damage to the graves or to the environment. We ask then whose interest was the Secretary attempting to protect if it is clear that the conduct of the Secretary was arbitrary and capricious? He also seeks to deprive all federal courts of jurisdiction to remedy the violations except the District Court for the District of Columbia, where it would be impossible for appellants to obtain any relief.

Neither the appellants nor the Amish had any previous knowledge of the Act or the regulations and did not participate in any manner in their promulgation. The time for taking any action had long since expired. If the regulations are applied to appellants, they have no remedy to redress under the Act the taking or violation of their property rights.

The Secretary filed an answer (App. 44) and an amended answer (App. 46) and both parties filed stipulations (App. 48). Following a hearing on June 30, 1980, the district court entered a preliminary injunction prohibiting the Secretary from taking further enforcement action against Holmes Limestone for mining within 100 feet of the burial plots.

### III. Jurisdiction

The district court dismissed the appellants' challenge to the validity of 30 C.F.R. § 761.5 based on its finding that it lacked jurisdiction to consider the challenge under 30 U.S.C. § 1276(a)(1). That section provides:

§ 1276. Judicial review—Review by United States District Court; venue; filing of petition; time.

(a)(1) Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal Program pursuant to this chapter shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue. Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rule-making by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with the law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

The legislative history of the Act indicates that both Senate and House versions of the bill that was considered expressly stated that such review was to be *only* in the District of Columbia, but the word *only* was later deleted in the Conference Committee bill that was finally adopted. If Congress had desired to limit jurisdiction to the District of Columbia, it would never have deleted the word *only* from the bill.

It should also be noted that the Act even provides that any subject to review "shall be affirmed unless the court concludes that

such action is arbitrary, capricious, or otherwise inconsistent with law." The Secretary would even preclude the District Court for the District in which the surface coal mining operation is located from determining whether his action is arbitrary or capricious.

In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the court stated:

A survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." (Citations omitted)

This has been reinforced by the enactment of the Administrative Procedure Act which embodies the basic presumption of judicial review. Holmes Limestone doing business with the Amish in Holmes County had no knowledge of the adoption of regulations by the Secretary restricting its right to engage in a lawful business. It had property rights, equipment and leases which were in existence even prior to the enactment of the Act and its regulations. To hold that such regulations can deprive it of its property rights raises serious constitutional questions which are being invoked in this appeal. See concurring opinion of Justice Powell in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 289–91, 98 S.Ct. 566, 575–76, 54 L.Ed.2d 538 (1978) rev. 545 F.2d 1 (6th Cir. 1976).

Since the district court dismissed for lack of jurisdiction it made no determination of the issue whether the action of the Secretary was arbitrary and capricious. This issue would appear to us to be a mixed question of law and fact requiring resolution by the trial court.

Application of the 100 feet rule in force as to public cemeteries with respect to Holmes Limestone and the Amish under the Administrative Procedure Act, 5 U.S.C. § 706(2), would not appear to make sense since it bears no reasonable relationship to anything. Without any reason the Secretary could have named 150 feet or 50 feet. Also the private burial plots could have only one or two graves. The uncontroverted

evidence at the trial is that surface mining can be safely conducted as close as 5 feet to the graves and cause no harm either to the graves or grave sites. *Cf. In re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1358–80 (D.C.Cir.1980).

There are serious questions about the propriety of limiting jurisdiction to review the regulations in issue to the District of Columbia within 60 days of its promulgation. No such regulation should be enforced by the court in this type of case without clear statutory support therefor which is lacking here. It is submitted that the Secretary has no authority to legislate by regulation.

There is no evidence that Congress ever intended to regulate private family burial plots not open to the public. It can hardly be claimed that the mining close to the graves on private property interferes with interstate commerce.

It certainly appears to be arbitrary and capricious for the Secretary to permit one coal operator to desecrate the graves in a public cemetery by removing the graves therefrom to another location to permit surface mining and at the same time interfering with another operator which respects a private family burial site by leaving it wholly intact and undisturbed and mining only to within 10 to 25 feet of it. The regulation thus permits desecration of graves and is therefore inconsistent with the Act.

Section 1501:13–19–03(3) of the Ohio Administrative Code was enacted from Section 522(e) of the Act, 30 U.S.C. § 1272(e). The Ohio Reclamation Board of Review held and the Common Pleas Court of Franklin County, Ohio, preliminarily decided that for the purpose of Ohio law, the private family burial site on the Raber farm involved in this appeal is not a *cemetery* within the meaning of that section of the Ohio Administrative Code. Also Ohio's proposed Regulation 1501:13–3–02 provides as follows:

(K) "Cemetery" means any area of land where human bodies are interred, but does not include private burial grounds.

The Secretary's arbitrary ruling occurred during the time when the interim standards were applicable and Ohio had jurisdiction and the ruling has interfered with the coal mining of Holmes Limestone and the Amish farmers and has already destroyed mining in certain areas resulting in substantial and irretrievable losses to both if the claimed arbitrary and unconscionable conduct of the Secretary is enforced by the courts.

We are of the opinion that it is not necessary for us at this time to rule on the claims to constitutional violations asserted by Holmes Limestone. We are not required to rule on the constitutional claims unless it is necessary. The district court on remand now having jurisdiction, may rule on the issue whether the Regulations and the Secretary's construction and application of them are arbitrary, capricious or otherwise inconsistent with law.

The record also reveals that Holmes Limestone and also the Amish owned other properties or leases existing prior to the Act and Regulations which may be affected by the position which the Secretary has taken and these issues can be considered and evidence relating thereto introduced on remand in the district court.

It should be noted that the *Hodel* decision of the Supreme Court referred to in the concurring opinion of Judge Merritt refers only to *facial* challenges to the constitutionality of the statutes and not to challenges of actual violations of the constitution which may be considered by the district court in remand if necessary.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

MERRITT, Circuit Judge, concurring in the judgment.

I agree that the district court has jurisdiction in this case to review the regulation defining the term "cemetery," 30 C.F.R. § 761.5, promulgated by the Secretary of the Interior. I disagree, however, with the reasoning employed in the majority opinion.

The jurisdictional question is solely one of legislative intent, requiring an interpretation of the statute in which Congress provided for judicial review of rules promulgated under the 1977 Surface Mining Act:

Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal program pursuant to this chapter shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue. Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

30 U.S.C. § 1276(a)(1). The court below held that the challenged regulation is a "national" regulation and interpreted the grant of review of such regulations in the District Court for the District of Columbia to be exclusive. The court concluded that it was foreclosed by the statute from addressing Holmes Limestone's argument that the regulation is arbitrary and capricious. The government agrees with the district court's reading of the statute, and argues that the statute requires that this challenge be brought within sixty days of the promulga-

tion of the regulation, a period that expired prior to commencement of this action. The government also argues that under the last sentence of 30 U.S.C. § 1276(a)(1), challenges to regulations may be brought only by parties who participated in the rulemaking process. Thus the government's position would not merely require parties in Holmes Limestone's position to litigate their claims in an inconvenient forum, but would altogether foreclose the availability of judicial relief. The government states that its interpretation reflects the Congressional intent that the propriety of a national regulation be determined in a single proceeding in a single forum within sixty days of its promulgation. This would guarantee that the important policies of the Act would be implemented in an efficient, orderly fashion. A contrary interpretation, the government argues, would "jeopardize the entire surface mining regulatory program" (Appellee's Brief at 15), because of the disruptive effects of constant litigation in the various courts throughout the country and the possibility of varying and contradictory interpretations rendered by different reviewing courts.

The government's policy argument has some force. But it conflicts with another policy that is paramount, namely the policy in favor of granting parties access to federal courts to resolve controversies arising from final administrative actions. *Cf. Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) ("judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress"); *Rusk v. Cort*, 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962) (judicial review under the Administrative Procedure Act will not be foreclosed "in the absence of clear and convincing evidence that Congress so intended").

The government argues that the provisions in § 1276(a)(1) for review of national rules in the District Court for the District of Columbia and within sixty days of their promulgation provide evidence of a Congressional intent to restrict review.

Holmes Limestone responds that the Conference Committee's deletion of the word "only" in the sentence referring to the District of Columbia court and the absence of any other language expressly limiting review reveal a Congressional intent to the contrary. It argues that Congress meant by this statute to extend jurisdiction to the District Court for the District of Columbia but not to cut off other avenues for relief.

The language of § 1276(a)(1) is unclear, and the legislative history is inconclusive on the question of whether Congress intended the prescribed methods of review to be exclusive. Two considerations lead me to interpret the statute against such exclusivity. First, in other statutory schemes Congress has clearly limited judicial review in a fashion that demonstrates that it knows how to express such an intent when it wishes. This was the situation in the statutes involved in the cases relied upon by the lower court and the government. *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (Emergency Price Control Act); *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978) (Clean Air Act). In comparison, the absence of any such express language in § 1276(a)(1) evidences Congressional intent that the review provisions not be exclusive.

Although positive intent cannot always be construed from Congressional silence, that interpretation works to the same end in this case as does the second consideration, which is the policy discussed above against foreclosing channels of judicial review. In the present case the government's construction of the statutory language would work a grave hardship upon small and medium-sized firms throughout the nation that lack the resources to participate in, or even remain abreast of, the manifold governmental activities that may someday affect their operations. As Justice Powell stated in *Adamo Wrecking, supra*, "It is totally unrealistic to assume that more than a fraction of persons and entities affected by a regulation—especially small contractors scattered across the country—would

have knowledge of its promulgation or familiarity with or access to the Federal Register." 434 U.S. at 290, 97 S.Ct. at 575 (Powell, J., concurring). The Supreme Court has upheld the constitutionality of express statutory restrictions upon judicial review of agency action. Nonetheless, the hardships resulting from restrictions upon review, borne by countless parties merely because they lack funds or political acumen, persuade me that in the absence of express provisions ambiguous statutory language should not be read to foreclose judicial relief.

I agree, therefore, with the majority's conclusion that the district court has jurisdiction to review Holmes Limestone's challenge of the regulation defining the term "cemetery." I express no opinion at this time on the merits of the claim, and I believe the majority improperly indulges in a discussion of the merits—even though it confesses that the issue is to be properly entertained only by the district court upon remand—that is unnecessary for a resolution of the case before us and that, therefore, can be read as nothing more than a strongly-worded personal opinion.

On the other hand, the majority fails to address the constitutional claims raised by Holmes Limestone, which are before us upon appeal and should be considered for a proper resolution of this case. Holmes Limestone argues that even if the regulation is not arbitrary and capricious, its application under 30 U.S.C. § 1272(e)(5) to forbid mining within one hundred feet of a private burial plot works an uncompensated taking of property and a denial of equal protection and is in excess of the federal government's authority under the commerce clause. The court below rejected these claims. I agree with the district court that the regulation as applied does not result in a taking in violation of the fifth amendment. I also think there is no merit to the equal protection claim. There is some question whether the commerce clause question was properly raised below. Even

if it was, however, Holmes Limestone's position appears to have been rejected in two recent Supreme Court opinions that upheld various sections of the Act against similar challenges. *Hodel v. Virginia Surface Mining and Reclamation Ass'n,* —— U.S. ——, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Hodel v. Indiana,* —— U.S. ——, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981).