**AMERIKOHL MINING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**AL HAMILTON CONTRACTING AND SUPPLY CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**CENTRAL PENNSYLVANIA COAL CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Nos. 433–88L, 441–88L and 442–88L.

United States Claims Court.

April 12, 1989.

Frank Mast, Pittsburgh, Pa., for plaintiffs, Donald W. Howser, Pittsburgh, Pa., of counsel.

Celia I. Campbell–Mohn, Washington, D.C., for defendant, Cheryl L. Smout, U.S. Dept. of the Interior, Office of the Sol. Div. of Surface Mining, Arlington, Va., of counsel.

## OPINION

NETTESHEIM, Judge.

Defendant has moved pursuant to RUSCC 12(b)(1), (4) over plaintiffs' opposition to dismiss the complaints for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Argument has been held.

## FACTS

Amerikohl Mining, Inc.; Al Hamilton Contracting and Supply Company, Inc.; and Central Pennsylvania Coal Company, Inc. ("plaintiffs"), are Pennsylvania-based coal mining companies claiming refunds for erroneous assessments made under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1232 (1982) (the "SMCRA"). The SMCRA empowers the Secretary of the Interior (the "Secretary") to create and administer the Abandoned Mine Reclamation Fund so as to provide for, *inter alia*, the "reclamation and restoration of land and water resources adversely affected by past coal mining." 30 U.S.C. § 1231(c)(1). Reclamation fees are imposed upon coal producers on the basis of the weight of coal produced for "sale, transfer, or use, including the products of in situ mining." 30 C.F.R. § 837.11(a) (1978) (later renumbered as 30 C.F.R. § 870.12(a) (1982)); *see* 30 U.S.C. § 1232(a).

Plaintiffs complain that because the regulations issued by the Secretary did not provide for deductions of materials which are weighty, but not coal, such as excess moisture, rock, debris and clay, the fees levied exceeded the Secretary's statutory authority. Additionally, plaintiffs argue that deductions for excess moisture, which are now allowed under recent amendments to the regulations, 30 C.F.R. §§ 870.-12(b)(3)(i), 870.18 (1988); *see* 53 Fed.Reg. 19,718 (1988), should be retroactively applied.

Plaintiff Amerikohl Mining, Inc., on or about July 30, 1982, paid reclamation fees on the gross weight of coal produced during the second quarter of 1982—including the weight of any excess moisture, rock, stone, clay or debris that was commingled with the coal before the first bona fide sale or transfer. It claims that it overpaid $2,779.66 in unwarranted reclamation fees.

Plaintiff Al Hamilton Contracting and Supply Co., Inc., on or about July 28, 1982, paid reclamation fees on the gross weight of coal produced during the second quarter of 1982. It claims that it overpaid $4,565.42 in excess reclamation fees.

Plaintiff Central Pennsylvania Coal Co., Inc., on or about July 29, 1982, paid reclamation fees on the gross weight of coal produced in the second quarter of 1982. It claims that it overpaid $1,074.17 in reclamation fees not required by law.

Each plaintiff seeks to invoke the jurisdiction of this court under the Tucker Act for money claims against the United States founded upon an Act of Congress and a regulation of an executive department. 28 U.S.C.A. § 1491(a)(1) (West Supp.1988).

## DISCUSSION

The initial inquiry of the court is whether it has been granted the jurisdiction to consider these cases and has the power to render an authoritative judgment. If Congress has circumscribed the court's authority to render a decision, particularly where the decisionmaking authority has been reserved exclusively for the action of another body, the court must dismiss the action for want of subject matter jurisdiction. As Chief Justice Chase wrote over 100 years ago in *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869):

> Without jurisdiction the Court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the Court is announcing the fact and dismissing the cause. And this is not less clear upon authority than upon principle....
>
> ... [J]udicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer.

74 U.S. (7 Wall.) at 514, 515.

In passing on the power of the Claims Court to entertain refund actions under the

SMCRA, the court does not write upon a clean slate. As the parties point out in their briefs, the question whether courts other than the United States District Court for the District of Columbia have jurisdiction to consider claims arising more than 60 days after a national regulation has issued is one that has been considered several times and at length by circuit courts of appeal. The choice between the parties as to jurisdictional theory devolves to a choice between divergent views of four federal courts of appeal—three of which agree on one approach and the fourth reaching an opposite result—on the proper interpretation of the SMCRA's grant of judicial review.

30 U.S.C. § 1276(a)(1) provides for judicial review of the Secretary's rulemaking, as follows:

> Any action by the Secretary promulgating national rules or regulations ... *shall be subject to judicial review in the United States District Court for the District of Columbia Circuit.* Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located.... A petition for review of any agency action subject to judicial review shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated and who is aggrieved by the action of the Secretary.

(Emphasis added.)

Plaintiffs argue that Congress did not intend to restrict review of plaintiffs' claims to either the District of Columbia federal district court or to a 60-day time frame. Plaintiffs rely on the Sixth Circuit's analysis in *Holmes Limestone Co. v. Andrus,* 655 F.2d 732 (6th Cir.), *cert. denied,* 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed. 2d 1292 (1981), in arguing that jurisdiction properly may lie with this court. Faced with a question similar to that in this case,

the *Holmes Limestone* court read the SMCRA legislative history as not requiring exclusive review of agency rulemaking in the District of Columbia district court. The court reasoned:

> The legislative history of the Act indicates that both the Senate and the House versions of the bill that was considered expressly stated that such review was to be *only* in the District of Columbia, but the word *only* was later deleted in the Conference Committee bill that was finally adopted. If Congress had desired to limit jurisdiction to the District of Columbia, it never would have deleted the word *only* from the bill.

655 F.2d at 737 (emphasis in original).

Alternatively, plaintiffs assert that were the court to find congressional intent unclear, the substantial policy interest in judicial review of agency actions bolsters its reading of the statute. Citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), plaintiffs contend that there is neither a " 'persuasive reason to believe' " nor " ' "clear and convincing evidence" ' " (quoting the legislative history of the Administrative Procedure Act) to indicate the exclusive jurisdiction of the District of Columbia court and that this court should not "lightly [infer]" one. Plfs' Br. filed Feb. 1, 1989, at 17 (quoting *Abbott Laboratories,* 387 U.S. at 140 & n. 2, 87 S.Ct. at 1511 & n. 2). Plaintiffs can rest assured that with the substantial case law addressing this issue, this court would not make any such inference lightly.

Defendant counters that the SMCRA is clear as to the exclusive jurisdiction of the District of Columbia district court. Relying on *Drummond Coal Co. v. Watt,* 735 F.2d 469, 473 (11th Cir.1984), defendant argues that the phrase "shall be subject to judicial review in the United States District Court for the District of Columbia Circuit," indicates congressional intention for a single forum to review challenges to SMCRA regulations. Defendant further contends that such a reading bolsters the policy interests in a national, uniform set of standards under SMCRA, 30 U.S.C. § 1202(a),

and the principle of statutory construction that holds that a specific designation of one court connotes exclusive jurisdiction. *See Drummond,* 735 F.2d at 473–75 (citing cases). The Eleventh Circuit reasoned:

> The word "shall" is a mandatory, not permissive, form and indicates a congressional intent to require judicial review of regulations having nationwide application occur in the federal district court for the District of Columbia. The result is neither absurd nor wholly impracticable. A rational basis can be conceived for centralizing review of national regulations. Congress may have had a particular desire to foster uniformity in the interpretations of these regulations. Congress' provisions in other statutes for a single avenue of review and the subsequent enactment of this statute suggest that limiting review to one court is not impracticable.

*Id.* at 473 (footnotes omitted).

Defendant underscores the fact that the Sixth Circuit's focus in *Holmes Limestone* on the Conference Committee's deletion of the word "only" is disfavored by three other circuits. *Drummond,* 735 F.2d at 474 ("Unexplained changes made in committee are not reliable indicators of congressional intent." (Citation omitted.)); *United States v. Troup,* 821 F.2d 194, 198–99 (3d Cir.1987) (court disagreed with the *Holmes Limestone*'s analysis, focusing instead on the word "shall" as an indicator of congressional intent); *Tug Valley Recovery Center v. Watt,* 703 F.2d 796, 800 (4th Cir.1983) (challenge to Secretary's approval of state plan construed as attack on regulation that could only be brought in District of Columbia district court within 60 days of promulgation); *Virginia v. Watt,* 741 F.2d 37, 41 n. 5 (4th Cir.1984) ("[I]nsofar as there is any conflict between *Holmes Limestone* and *Tug Valley,* we reject the Sixth Circuit's jurisdictional analysis and reaffirm our holding in *Tug Valley.*"), *cert. granted,* 469 U.S. 979, 105 S.Ct. 379, 83 L.Ed.2d 315 (1984), *cert. dismissed,* 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985).

"It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further." *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788 (Fed.Cir.) (citing, *inter alia, Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982)), *cert. denied,* —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The statute in question is a paradigm of clarity. It is only by plumbing the legislative history that *Holmes Limestone* found the legerdemain in the removal of "only" to provide the peg upon which to hang its interpretation that the statute really did not mean to limit judicial review. Justice Scalia recently issued a scathing indictment of what he characterized as the "level of unreality that our unrestrained use of legislative history has attained."

> It is neither compatible with our judicial responsibility of assuring reasoned, consistent and effective application of the statutes of the United States, nor conducive to a genuine effectuation of congressional intent, to give legislative force to each snippet of analysis, and even every case citation, in committee reports that are increasingly unreliable evidence of what the voting members of Congress actually had in mind....

*Blanchard v. Bergeron,* —— U.S. ——, ——, 109 S.Ct. 939, 947, 103 L.Ed.2d 67 (1989) (dissenting op.). Indeed, it would be remarkable if legislative materials generated by committee staffs failed to provide support for any desired reading of a legislative enactment.

After having reviewed all of the cases cited by the parties, the court concludes that defendant's position is backed by solid precedent, and more of it, and represents the correctly reasoned approach. The term "shall" is an affirmative command from Congress, reposing exclusive jurisdiction for the review of agency regulations with the District of Columbia court. Further, it is evident that Congress intended SMCRA to serve as a set of "uniform minimum nationwide standards", *Hodel v. Virginia Surface Mining & Reclamation Assoc.,* 452 U.S. 264, 280, 101 S.Ct. 2352, 2362–69

L.Ed.2d 1 (1981) (citing H.R.Rep. No. 95–218, 95th Cong., 1st Sess. 58 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin. News 593, 596), and that this purpose is served and protected by the designation of an exclusive forum.[1]

Plaintiffs' argument based upon *South Puerto Rico Sugar Company Trading Corp. v. United States,* 167 Ct.Cl. 236, 334 F.2d 622 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965), and *Eversharp Inc. v. United States,* 129 Ct.Cl. 772, 125 F.Supp. 244 (1954), amounts to no argument at all. In *South Puerto Rico,* the court stated that parties can recover under the Tucker Act for exactions illegally imposed by federal officials, "except where Congress has expressly placed the jurisdiction elsewhere". 167 Ct.Cl. at 244, 334 F.2d at 626. It is whether Congress has reposed that jurisdiction elsewhere that concerns this court. Likewise, *Eversharp* adds nothing to the discussion of whether the jurisdiction of the district court is exclusive. In claiming jurisdiction to review a challenged regulation, the court in *Eversharp* remarked that many courts around the country had passed on the validity of the identical regulation, finding it void. The facts in this case certainly are different.

Furthermore, plaintiffs' challenges to the substance of the regulations promulgated are of precisely the kind that would do the greatest damage to a uniform system of national regulations. This point, too, is borne out in the analysis of the Third and Fourth Circuits, respectively, in *Troup,* 821 F.2d 194, and *Tug Valley,* 703 F.2d 796.

Plaintiffs' challenge to the Secretary's disallowance of a SMCRA deduction for non-combustible debris collected incident to surface mining resembles closely the miner's claim in *Troup.* Troup's mining operation removed a product known as "run-of-mine," which, in addition to coal, contained large amounts of rock, clay, dirt and other debris. Troup complained that the reclamation fee assessment should only be made

on that fraction of the "run-of-mine" that represented "combustible", commercially usable, coal. 821 F.2d at 196. The Third Circuit wrote:

We find Troup's attack on the regulation to be the type of challenge to national regulations contemplated by the jurisdictional statute 30 U.S.C. 1276(a)(1).

. . . .

We therefore hold that the district court for the Eastern District of Pennsylvania did not have subject matter jurisdiction to recognize Troup's defense that he should be charged reclamation fees only on "useable" coal. Because it runs directly counter to a promulgated regulation, this defense was, in fact, a regulatory challenge and, as such, could only be brought in the United States District Court for the District of Columbia....

*Id.* at 198, 199 (citation omitted). An identical rule should be applied to plaintiffs' claim for refunds in these cases.

Similarly, plaintiffs' challenge to the Secretary's refusal retroactively to apply a deduction for "excess moisture" content parallels the claim of a state environmental group in *Tug Valley.* Plaintiff challenged the Secretary's exemption of state reclamation review boards from the statute's conflict of interest provisions. In affirming the district court's dismissal of Tug Valley's claims, the Fourth Circuit stated:

The Secretary evidently has determined that sound policy calls for preserving state mining and reclamation commissions representing diverse interests.

... Environmentalists may well object to the Secretary's exemption of the boards representing multiple interests, but the proper procedure for pursuing their grievances is to petition the Secretary for an amendment of the regulation and, if rejected, to seek review. Tug Valley simply has no statutory ground for complaint under the existing statutory scheme. Its challenge to the Secretary's approval of the [Reclamation Board of Review] ... can only be construed as an attack on § 705.5 itself.

---

1. Congress need not use the word "exclusive" in designating a single forum for judicial review. *E.g., Getty Oil Co. v. Ruckelshaus,* 467 F.2d 349,

356 (3d Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973).

Therefore, the district court's dismissal of Tug Valley's statutory claim for lack of subject matter jurisdiction was proper. 703 F.2d at 800 (citations and footnotes omitted). Plaintiffs may dispute the propriety of not allowing retroactive application of the "excess moisture" deduction, but this does not constitute a basis for a complaint that can be recognized in this court.

## CONCLUSION

Based on the foregoing, defendant's motion is granted, and the Clerk of the Court shall dismiss the amended complaint in No. 433–88L and the complaints in Nos. 441–88L and 442–88L for lack of subject matter jurisdiction.[2]

No costs.

**2.** Because the court agrees with defendant that plaintiffs' claims must be dismissed for want of subject matter jurisdiction, it is unnecessary to rule on the substance of plaintiffs' claims.