AMERIKOHL MINING, INC., Al Hamilton Contracting and Supply Co., Inc., and Central Pennsylvania Coal Company, Inc., Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

No. 89–1522.

United States Court of Appeals, Federal Circuit.

April 10, 1990.

Donald W. Howser, Pittsburgh, Pa., argued for plaintiffs-appellants. With him on the brief was Frank Mast.

Andrew C. Mergen, Dept. of Justice, of Washington, D.C., argued for defendant-appellee. Richard B. Stewart, Asst. Atty. Gen., John A. Bryson, Celia Campbell-Mohn and Angus E. Crane, Dept. of Justice, of Washington, D.C., were on the brief for defendant-appellee.

Before MAYER, Circuit Judge,
BALDWIN, Senior Circuit Judge, and
MILLS, Judge.*

BALDWIN, Senior Circuit Judge.

Amerikohl Mining, Inc., Al Hamilton Contracting and Supply Co., Inc. and Central Pennsylvania Coal Company, Inc., ("Amerikohl") appeal the decision of the United States Claims Court, Nos. 433–88L, 441–88L and 442–88L, dismissing the appellants' consolidated complaints seeking reimbursement for reclamation fees allegedly paid in excess of the statutory requirement under the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. 1201, *et seq.* (1977), for lack of subject matter jurisdiction. *See Amerikohl Min., Inc. v. United States*, 16 Cl.Ct. 623 (1989). We affirm.

## BACKGROUND

In 1977, Congress promulgated the SMCRA to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a) (1982). Among other things, the SMCRA requires coal mining operators to

restore the mined land to a condition which supports the land's original or better use, prevents erosion, preserves topsoil and supports re-vegetation. 30 U.S.C. § 1265(b) (1982). All operators subject to the statute are required to pay a reclamation fee to the Secretary of Interior ("Secretary") for every ton of coal mined, in order to fund the restoration of mined lands.[1] 30 U.S.C. § 1231 (1982). The original regulation governing the payment of the reclamation fee provided in part that:

(a) The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the products of in situ mining.

(b) The fee shall be determined by *the weight and value* at the time of initial bona fide sale, transfer of ownership, or use by the operator.

30 C.F.R. 837.11 (1978); 42 Fed.Reg. 62,639, 62,715 (Dec. 13, 1977) (emphasis added).

In 1981, the Secretary revised the regulation in order "to clarify the point in time of fee determination, as well as the value and weight parameters for calculating reclamation fees...." 47 Fed.Reg. 28,574, 28,577 (June 30, 1982). The revised regulation stated that:

(3) The weight of each ton shall be determined by the actual gross weight of the coal.

(i) Impurities, including water, that *have not* been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator *shall not* be deducted from the gross weight.

30 C.F.R. § 870.12(b)(3)(i) (1983) (emphasis in original).

The Secretary further amended this regulation in 1988 to allow for the deduction of the excess moisture from the gross weight of coal mined and sold after July 1, 1988.[2]

---

\* Honorable Richard Mills, Judge, United States District Court for the Central District of Illinois, sitting by designation.

1. Congress estimated that the cost to reclaim abandoned mines would be between $7 and $10 billion. H.R.Rep. No. 95–218, 95th Cong. 1st Sess. *reprinted in* 1977 U.S.Code Cong. & Admin. News 593, 667. It stated that with such high

costs, "[t]he burden for paying for reclamation is rightfully assessed against the coal industry." *Id.* at 668.

2. The 1988 revised regulation provides in part:
§ 870.12 Reclamation fee
(3) The weight of each ton shall be determined by the actual gross weight of the coal.

This regulation was explicitly not made retroactive. 53 Fed.Reg. 19,718, 19,720.

Amerikohl filed complaints in the United States Claims Court against the United States alleging the imposition of an erroneous assessment of fees under 30 U.S.C. § 1232(a)[3] and the rules promulgated thereunder, 30 C.F.R. § 870.12(b) (1982). Specifically, Amerikohl sought a refund from the government for fees paid in 1982 under regulations which did not provide for a deduction of materials such as excess moisture, debris and clay, which were not coal. The plaintiffs complained that, because the Secretary's regulations did not provide for the above deductions, the levied fees exceeded the Secretary's statutory authority. They further argued that the deductions for excess moisture allowed under the 1988 amended regulation, 30 C.F.R. § 870.12(b)(3)(i) (1988), should be retroactively applied.

In response to Amerikohl's complaint, the United States moved to dismiss the action for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.

The Claims Court determined that, under 30 U.S.C. § 1276(a)(1) (1982), the United States District Court for the District of Columbia has exclusive jurisdiction to consider challenges to regulations promulgated under SMCRA and granted the government's motion to dismiss the action. *Amerikohl*, 16 Cl.Ct. at 628.

This appeal followed.

### ISSUE

The only issue is whether the District Court for the District of Columbia has exclusive jurisdiction to hear challenges to rules and regulations promulgated under the SMCRA.

### OPINION

 The issue raised in this appeal requires the interpretation of 30 U.S.C. § 1276(a) (1982), which provides:

§ 1276. Judicial review

(a) Review by United States District Court; venue; filing of petition; time

(1) Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal program pursuant to this chapter shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue. Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of

---

(i) Impurities that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator, excluding excess moisture for which a reduction has been taken pursuant to § 870.18, shall not be deducted from the gross weight.
(ii) Operators selling coal on a clean coal basis shall retain records that show run-of-mine tonnage, and the basis for the clean coal transaction.
30 C.F.R. § 870.12(b)(3)(i) and (ii) (1988).

**3.** 30 U.S.C. § 1232(a) (1982):
§ 1232. Reclamation fee
(a) Payment; rate

All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 10 cents per ton, whichever is less.

such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

Amerikohl asserts that section 1276(a)(1) should be interpreted to mean that the District Court for the District of Columbia has exclusive jurisdiction over the review of preenforcement proceedings, upon the filing of a petition within 60 days "by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary," but that other courts may consider the validity of SMCRA regulations in enforcement proceedings initiated by aggrieved parties who did not participate in the administrative proceedings. The present action for reimbursement of fees is, according to Amerikohl, an enforcement proceeding.

Amerikohl arrives at its interpretation of section 1276(a)(1) largely by focusing on statutory construction and the Sixth Circuit's analysis in *Holmes Limestone Co. v. Andrus*, 655 F.2d 732 (6th Cir.1981), *cert. denied*, 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982). It also asserts that public policy considerations favor its interpretation.

This court rejects Amerikohl's interpretation whether it be based upon statutory construction or public policy. It is well-settled law that the plain and unambiguous meaning of the words used by Congress prevails in the absence of a clearly expressed legislative intent to the contrary. *See Mansell v. Mansell*, — U.S. —, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989); *LSI Computer Sys. v. United States Int'l Trade Comm'n*, 832 F.2d 588, 590 (Fed.Cir. 1987). Here, the words "shall be subject to judicial review in the United States District Court for the District of Columbia Circuit" are plain and unambiguous. This court acknowledges that the word "shall" is mandatory and not permissive. *See United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 360, 15 S.Ct. 378, 380, 39 L.Ed. 450 (1894). Hence, it appears from the plain meaning of the language in section 1276(a)(1) that Congress intended the District Court for the District of Columbia to be the exclusive forum for challenging national rules and regulations promulgated under the SMCRA. Moreover, nothing in the legislative history of the SMCRA indicates that Congress intended an interpretation contrary to the plain meaning of these words. Indeed, the legislative history indicates that Congress wished to create with the SMCRA a uniform system of national standards. H.R.Rep. No. 95–218, 95th Cong. 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin.News 593, 595. The establishment of an exclusive forum to review regulations under the SMCRA which are of national scope furthers that goal. *Id.* at 684.

Relying on *Holmes Limestone Co. v. Andrus*, 655 F.2d 732 (6th Cir.1981), *cert. denied*, 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982), Amerikohl argues that the SMCRA's legislative history does, in fact, suggest a contrary intent. In *Holmes Limestone*, a case similar to the present one, the court noted that both the Senate and House versions of the bill that was to become the SMCRA, expressly stated that judicial review was to be "only" in the District Court for the District of Columbia, but that the word "only" was deleted in the Conference Committee bill that was ultimately adopted. 655 F.2d at 737. It concluded, as Amerikohl argues now, that the omission of the word "only" from the bill indicates Congress' desire not to limit jurisdiction to the District Court for the District of Columbia. *Id.*

In *Drummond Coal Co. v. Watt*, 735 F.2d 469, 474 (11th Cir.1984), the Eleventh Circuit responded to the same argument by noting that the Conference Committee Report, H.R.Conf.Rep. No. 95–493, 95th Cong. 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 728, 743, is silent with regard to why Congress omitted the word "only" from the finalized bill. It stated that:

> Unexplained changes made in committee are not reliable indicators of congressional intent. *See Trailmobile Company v.*

*Whirls*, 331 U.S. 40, 61, 67 S.Ct. 982, 992, 91 L.Ed. 1328 (1947). Although the omission may represent an intention to vest concurrent jurisdiction, as the government notes, it may represent instead a congressional recognition of the force of the word "shall" and an intention to avoid redundancy. Alternatively, as Justice White suggested in his dissent from the denial of certiorari in *Holmes Limestone*, the omission may have been completely inadvertent. 456 U.S. 995, 996, 102 S.Ct. 2280, 2281, 72 L.Ed.2d 1292 (1982) (White, J., with Blackmun, J., dissenting).

*Id.* (footnote omitted).

■ Although decisions from other circuits are not binding on this court, we may look to another circuit for guidance and may be persuaded by its analysis. *See Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed.Cir.1987). Here, we wholeheartedly agree with the Eleventh Circuit's analysis in *Drummond*.[4] We further conclude, as did the Claims Court below, that section 1276(a)(1) is "a paradigm of clarity," and that "[i]t is only by plumbing the legislative history that *Holmes Limestone* found the legerdemain in the removal of 'only' to provide the peg upon which to hang its interpretation that the statute really did not mean to limit judicial review." 16 Cl.Ct. at 626.

Amerikohl further argues that, as a matter of public policy, Congress could not have intended section 1276(a)(1) to be the exclusive mode of challenging the validity of regulations under the SMCRA because this section does not make adequate provision for legal review of claims in "enforcement proceedings" by parties who, like itself, did not participate in the original administrative proceedings. In so arguing, Amerikohl directs this court to 5 U.S.C. § 703 (1988) which provides, in part, that:

The form of proceeding for judicial review is the special statutory review pro-

ceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, *any applicable form of legal action* .... in a court of competent jurisdiction.... Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil and criminal proceedings for judicial enforcement. (emphasis added).

The "applicable form of legal action" emphasized above is, according to Amerikohl, provided by the Claims Court's review of the present claim for a refund, pursuant to 28 U.S.C. § 1491 (1982).[5]

In response to Amerikohl's argument, we note that the alleged distinction between "pre-enforcement and enforcement" proceedings cannot be found by reading the plain language of section 1276(a)(1), nor is this distinction suggested by legislative history. In fact, such a distinction, which permits a suit challenging the SMCRA to be brought in any court, at any time, by any aggrieved party, is contrary to legislative intent. *See* 30 U.S.C. §§ 1201(g), 1202(a) (1982). In *Commonwealth of Va. ex rel. Va. Dept. of Conserv. v. Watt*, the Fourth Circuit specifically addressed this issue in its analysis of section 1276(a)(1) and said:

Conflicts among various district courts concerning the validity of the federal regulations would impair or prevent the establishment of nationally uniform minimum standards. Moreover, under the view adopted by the district court and appellees in this case, those opposed to a national regulation could simply ignore the sixty-day statutory time limit preserved for bringing an action in the District of Columbia and obtain relief later in their local jurisdiction. Such reasoning clearly subverts congressional intent.

---

**4.** The Third and Fourth Circuits have also rejected the *Holmes Limestone* holding on concurrent jurisdiction, based on the court's reasoning in *Drummond*. *See Tug Valley Recovery Center v. Watt*, 703 F.2d 796 (4th Cir.1983); *United States v. Troup*, 821 F.2d 194 (3rd Cir.1987).

**5.** 28 U.S.C. § 1491 (1982) provides that:
(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department.

741 F.2d 37, 41 (4th Cir.1984) (footnote omitted).

Furthermore, in keeping with legislative intent, 30 U.S.C. § 1276(a)(1) (1982), and not 28 U.S.C. § 1491 (1982) or 5 U.S.C. § 703 (1988), creates the right of judicial review of regulations promulgated under the SMCRA. *See* H.R.Rep. No. 218, 95th Cong. 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin.News 593, 708. Where "Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word 'exclusive' in the statute providing for a forum for judicial review." *Getty Oil Co. v. Ruckelshaus,* 467 F.2d 349, 356 (3rd Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973) (citing *UMC Indus., Inc. v. Seaborg,* 439 F.2d 953 (9th Cir.1971)).

Thus, regardless of how Amerikohl characterizes the present action, Amerikohl is precluded from challenging the validity of regulations promulgated under section 1276(a)(1) because it is in the wrong court and because it did not participate in the administrative proceedings. Despite the limitations imposed by section 1276(a)(1),

Amerikohl may still attempt to obtain the requested refund by petitioning the Director of the Office of Surface Mining Reclamation and Enforcement ("Director") under 30 U.S.C. § 1211(g) (1982) to amend or repeal the 1982 regulation which does not permit a deduction for excessive moisture, dirt, debris and clay in coal weight calculations, or by petitioning the Director to amend the regulation which prohibits the retroactive application of the 1988 regulation, 30 C.F.R. § 870.12(b)(3)(i) and (ii) (1988). *See Tug Valley Recovery Center v. Watt,* 703 F.2d 796, 800 (4th Cir.1983).

As we conclude that the Claims Court correctly decided that it lacked subject matter jurisdiction, we decline to address the other substantive issues presented by Amerikohl in this case. Accordingly, the Claims Court decision is

AFFIRMED.